RECEIVED

OCT 6 2022

CLERK, U.S DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

1   CARL A. WESCOTT
    8210 E. Via de la Escuela
2   Scottsdale, AZ 85258
    in propria persona
3   CARLWSOJ@GMAIL.COM
    +1 936 937 2688
4

FILED

OCT - 6 2022

CLERK, U S DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

5                    UNITED STATES DISTRICT COURT

6                    WESTERN DISTRICT OF TEXAS

7                            AUSTIN DIVISION

8   CARL A. WESCOTT,                          Civil Action No. **1:22-CV-00785 - LY**

9                    Plaintiff,               **PLAINTIFF'S AMENDED VERIFIED**
                                              **LEGAL COMPLAINT FOR BREACH**
10  vs.                                       **OF CONTRACT, PROMISSORY**
                                              **FRAUD; NEGLIGENT**
11                                            **MISREPRESENTATION;**
    MR. WILLIAM "RANDY" RUSS;                 **PROMISSORY ESTOPPEL;**
12  LAS OLAS;                                 **NEGLIGENCE; BREACH OF**
    MS. KELI RUSS;                            **FIDUCIARY DUTY; UNJUST**
13  LAS OLAS ECUADOR, INC.;                   **ENRICHMENT; and ABUSE OF**
    MR. DAVID MAKSYMUIK;                      **PROCESS**
14  BOBBY CASTLE CONSTRUCTION;
15  TEXAS FIXTURES AND INTERIORS, INC.;
    VISTA PACIFICA, LLC;
16
17                   Defendants.

18      + DOES 1 through 25

19

20          Plaintiff Carl A. Wescott, proceeding pro se, complains of Defendants Mr. William "Randy"

21  Russ; Ms. Keli Russ; Las Olas, Las Olas Ecuador Inc.; Mr. David Maksymuik ("Maksymuik");
22
23  Bobby Castle Construction; Texas Fixtures and Interiors, Inc.; and Vista Pacifica, LLC.  In support

24  of his legal complaint, the Plaintiff further alleges as follows:

25                                                                                                  1

26  **PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF**
    **CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION;**
    **NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL;**
    **UNJUST ENRICHMENT; ABUSE OF PROCESS and AN ACCOUNTING**

**Concise Case Summary**

The Plaintiff formerly owned a company that owned two beach properties ("the Properties", or "P2 and P3"). The Plaintiff had sold the properties to the Defendants (with the company if they so desired), as per the original two written contracts formed between the parties and early modifications. Defendants also committed to buying a neighboring property, P1, from a different company of the Plaintiff's. All three purchases were to close in December 2018 or January 2019. In 2018, the Plaintiff traveled to Ecuador, in part to provide his notarized power of attorney in favor of Defendants' company so that Defendants could effectuate the transfer of title/ownership of the Properties (and also of P1). Mr. David Maksymuik was left in charge of effectuating the transfer of title/ownership, with the help of attorneys. Upon information and belief, Defendants transferred the title/ownership to the Properties in early 2019. Purchasers have had control of the properties via the Plaintiff's power of attorney since 2018. Thus, all that remained to 'close' the Defendants' purchases of the Properties was for the Defendants to pay the remaining amounts due. However, the Defendants have breached their contracts by not paying the Plaintiff in full. The Defendants have only made approximately $132,700 of payments, per the Plaintiff's and Mr. Russ' joint accounting, across all three properties (P1, P2, and P3). Per Mr. Russ' and Plaintiff's agreed accounting and allocations of payments, the Defendants have paid $44,233 towards P2 and $44,233 towards P3. Mr. Russ, as agent for his partner Mr. Maksymuik and their partnership, has made many lulling promises, has made many promises to pay, and has provided loans to the Plaintiff which were due to unwind when Defendants had made their full payments owing. The most recent promises to pay amounts owing in full came in April 2022 and June 2022, forming new oral

2

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

1  contracts at that point, documented in writing.  More recently, in June 2022, Mr. Russ, as agent for

2  his partner, their partnership, and his and his partner's companies, repudiated the parties' contract

3  and/or his desire or ability to pay what he and they owe.  The Defendants owe the Plaintiff over US

4  $2 million before pre-judgment interest, consequential damages, and the Plaintiff's requested

5  exemplary damages, given the extreme circumstances herein.

6

7

8  **Claims distinct from another anticipated lawsuit against Mr. Russ and Related Defendants**

9  The Plaintiff plans to file another legal complaint that has similar claims to the instant case.  Mr.

10 Russ and Mr. Maksymuik and their Las Olas partnership also formed another written contract with

11 Plaintiff on September 1st, 2017, to purchase the property just to the north of P2, which the parties

12 refer to in shorthand as "P1".   The buyers were originally supposed to close in late 2018 or January

13 2019, but like in the case at bar, have failed to pay the Plaintiff the vast majority of monies owed.

14 The reason the Plaintiff is separating the P1 legal complaint from the instant case (for P2 and P3) is

15 that there are many more co-defendants in the P1 case, such as Mr. Edward Berr, Mr. James

16 Upshaw, Mr. and Mrs. Trainor, and Ms. Chris Patterson.  The circumstances are also a little

17 different.  In the instant case, the Defendants have had control of the Properties since 2018.  In the

18 related P1 case, the other co-Defendants have refused to rescind a First Mortgage on P1 that was

19 paid off in 2018, preventing the transfer of the P1 property, even though Mr. Maksymuik has the

20 Plaintiff's power of attorney.

21

22

23

24

25

26

3

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION;
NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL;
UNJUST ENRICHMENT; and ABUSE OF PROCESS**

**The Parties: Plaintiff and Defendants**

1. The Plaintiff is an individual presently residing in Scottsdale, Arizona.

2. Defendant Mr. William "Randy" Russ ("Russ"), a US citizen and resident of the Austin metropolitan area in Texas, is the 50/50 business partner of Mr. Maksymuik in a residential development known as "Las Olas". Russ' bio states

> "A disciplined and multi-faceted entrepreneur, Mr. Russ has acquired extensive experience over the past 35 years, in construction and real estate development business. As the President of very successful companies: Bobby Castle Construction – Russ Construction Company and of Texas Fixtures & Interiors, a commercial millwork and cabinet manufacturing company located in Texas, Mr. Russ has been responsible for acquisition, planning, sales, and construction of multiple projects throughout his career. He has constructed multiple developments including residential homes, high-rise buildings, retail shopping centers, businesses, and industrial parks across the United States."

3. "Las Olas" is Mr. Russ' and Mr. Maksymuik's golf course residential resort community, featuring 1620 residences, a 650-acre private nature reserve, a seaside championship golf course, a beach club and space, a tennis club, equestrian, marina, health & wellness center, shops and restaurants. Technically, Las Olas' holdings are believed to be in two Ecuadorian companies which are owned by a Belize Foundation controlled by Russ and Maksymuik, but for all intents and purposes Las Olas is run as a partnership between Russ and Maksymuik. "Las Olas" is run as a 50/50 partnership between Russ and Maksymuik. Russ and Maksymuik are partners in the business of Las Olas, sharing profits and losses.

4. Defendant Ms. Keli Russ is married to Mr. Russ and resides in the Austin metropolitan area.

5. Las Olas Enterprises, Inc. is a company listed by Mr. Maksymuik on LinkedIn as his employer. The Plaintiff believes Las Olas Enterprises, Inc. to be a company related to the Las Olas

4

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

residential development partnership (aka Las Olas Ecuador). The Plaintiff could not find Las Olas Enterprises, Inc. as a company in good standing with the Texas Secretary of State, and thus believes that Las Olas Enterprises, Inc. is a citizen of another state.

6. Defendant David Maksymuik ("Maksymuik"), a Canadian citizen who offices in Hutto, Texas, is Mr. Russ' partner in the residential development partnership known as "Las Olas". In 2018 Mr. Maksymuik made offers on behalf of his and Mr. Russ' partnership to purchase of each of the beach properties (P2 and P3) for US $1.236 million. The offers were accepted.

Maksymuik's bio states

> "Mr. Maksymuik holds a degree in Commercial Finance from the University of Western Ontario, as well as accounting designations in both the United States of America and Canada. He has spent the last 30 years providing financial leadership and strategic direction to rapidly expanding companies in renewable energy, construction, marketing, and transportation industries. His vast experience includes structuring and arranging financing for renewable energy and construction projects totaling in excess of $1.0 billion. Over a 15-year period he coordinated the financial and management reporting systems for large construction projects across the United States and Canada. He was instrumental in taking two separate companies public, on the New York Stock Exchange and the Toronto Stock Exchange. He has been involved in M&A activities throughout his career purchasing more than twenty-five companies during that period."

7. Bobby Castle Construction was incorporated in 1971 and is owned by Randy Russ who entered the firm as a partner in 1984. Bobby Castle Construction is headquartered at 519 Tradesman Park Drive in Hutto, Texas. Bobby Castle Construction is licensed to operate in over half the states in the United States and is believed to have approximately thirty (30) operating subsidiaries and/or related companies. Bobby Castle Construction ("BCC") is a national builder, primarily of big box retail stores in malls. Clients of BCC include Michaels Crafts Stores, for whom BCC has completed more than 250 stores over twenty (20) states.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

1   BBC has built over two hundred (200) Cost Plus World Market stores.  BCC has also

2   constructed many Big Lot stores, Bed Bath & Beyond stores, Bevmo locations and sites for

3   JCPenney.  BCC has also constructed over a hundred (100) medical and dental clinics. BCC has

4   approximately one hundred (100) employees and also hired seasonal craftsmen and builders,

5   employing roughly two hundred (200) men and women working in Texas and across the United

6   States on construction projects.

7

8.  Texas Fixture and Interiors, Inc., of Hutto, Texas ("Texas Fixtures"), has long been nationally

9   known as a leading manufacturer of display fixtures and cabinet integration for the retail

10  industry.  As the Las Olas web site states:

> "The demands of modern retail and store fixture manufacturing come together to create
> designs that cleverly intertwine art, architecture, and technology into the retail space and the
> displays that hold merchandise. Display design and finishing involves the combining of
> mixed media and special effects more than at any other time in store fixture manufacturing
> history. Retailers depend on strong design to give them a competitive edge. Creating store
> fixtures in unusual sizes, shapes, finishes, and layout, provide visual impacts and can
> effectively mold consumer impressions.
> We have also supplied millworks through our sister company Texas Fixtures and Interiors
> Inc. to such projects as Dell Children's Medical Center, Austin Hilton and Convention
> Center, University of Texas, San Antonio Spurs stadium, Austin F1 track skyboxes and Ms
> State field house."

9.  Vista Pacifica, LLC is a Texas Limited Liability Company and is believed to be an owner of Las

Olas land and the recipient of payments for Las Olas.  If the Plaintiff discovers that Vista

Pacifica, LLC is not a Las Olas owner or partner, the Plaintiff will dismiss Vista Pacifica, LLC

from this legal complaint.

6

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION;
NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL;
UNJUST ENRICHMENT; and ABUSE OF PROCESS**

**Related Parties**

10. Mr. Jeff Barringer, along with his ex-wife Tammy Barringer, were the original owners of P2, P3, and P1 when the three parcels were all one property. The Plaintiff owes Mr. Barringer over US $542k in mortgage debt on P2 and P3.

11. Edward Berr is a California-based mortgage, loan, and investment broker who put together a syndicate of twenty-seven investors who share 27/28ths of the mortgage debt on related and neighboring property P1. (Ms. Laura Roden has the last 1/28th tranche).

**Further allegations regarding conspiracy between defendants**

12. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Mr. Randy Russ, Ms. Keli Russ and Mr. David Maksymuik, as individuals, in addition to acting for himself and herself and on their own behalf individually, as well as for the benefit of their marital communities, are and were acting as the agent, servant, employee, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the other Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

13. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all the other Defendants.

14. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and

7

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

1   knowledge of each and in conspiracy with all other Defendants (individual and corporate,

2   including Las Olas, Bobby Castle Construction, Las Olas Ecuador Inc., and Vista Pacific LLC).

3  15. In addition, upon information and belief, there are even more nefarious corporate, trust, and

4   other entity type Defendants beyond Las Olas Enterprises, Inc., Bobby Castle Construction,

5   Texas Fixtures and Interiors, Inc., and Vista Pacifica, LLC involved in these conspiracies,

6   currently unknown to Plaintiff. They shall emerge with the benefit of legal discovery.

7
8  16. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint,

9   any and all such corporate entities, in addition to the named corporate Defendants, in addition to

10   acting for itself and for its own behalf, was acting as the agent, servant, and/or representative of,

11   and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the

12   Defendants (entity and individual) and within the course, scope, and authority of that agency,

13   service, employment, representation, and conspiracy.

14
15  17. Indeed, upon information and belief, Mr. Russ, Mr. Maksymuik, Bobby Castle Construction,

16   and Texas Fixtures and Interiors, Inc., were and are partners sharing profits and losses in the Las

17   Olas partnership and have liability for each other's actions and related liabilities to one another

18   via agency.

19  18. Further, it appears that most or all the named defendants, to the extent they actually exist (cf.

20   Las Olas Enterprises, Inc.) also co-mingled assets and paid for each other's liabilities, and thus

21   the Plaintiff alleges upon information and believe that most of the named Defendants have alter

22   ego liability along with Mr. Russ, Mr. Maksymuik, and their Las Olas development partnership.

23
24
25
26
8

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

19. Plaintiff further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all the Defendants.

20. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

## Jurisdiction and Venue

21. Mr. Randy Russ lives and works in the Austin, Texas metropolitan area, along with his wife Ms. Keli Russ.

22. Mr. Russ runs Las Olas from his Hutto, Texas office at 3874 Limmer Loop Road.

23. The Las Olas partnership is also run from the same office at 3874 Limmer Loop Road in Hutto.

24. Mr. Maksymuik, the other Founding Partner, also offices at 3874 Limmer Loop, using and publishing that address for many business purposes, including those of Las Olas (Exhibit A1).

25. On LinkedIn, Mr. Maksymuik lists Las Olas as "Las Olas Enterprises, Inc.", and having done business in and via Hutto, Texas, for almost eleven (11) years (Exhibit A2).

26. Vista Pacifica, LLC is a citizen of this district, with its office in Hutto, Texas.

27. Bobby Castle Construction is headquartered in Hutto, Texas, as well.

28. This is an action for damages pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and a claim for damages greater than US $75,000. The alleged damages are explained in further detail below as they are critical to this Court establishing subject-matter jurisdiction.

9

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

1    29. Supplemental jurisdiction over the Plaintiff's state law claims is pursuant to 28 U.S.C. § 1367.

2    30. With the natural and legal citizens being domiciled in this district, this venue is appropriate, and

3        this Court can assert jurisdiction over these Defendants.

4

5

6    **Subject-Matter Jurisdiction – Legal Standards**

7    31. With damages of $75,000 and the diversity of citizenship of Plaintiff and Defendants, the Plaintiff

8        qualifies for United States District Court under 28 U.S. Code § 1332(a)(1):

9

10       DIVERSITY OF CITIZENSHIP; AMOUNT IN CONTROVERSY; COSTS

         **(a)**The district courts shall have original jurisdiction of all civil actions where the matter in
11       controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is
         between—
12              **(1)** citizens of different States;    (28 U.S. Code § 1332 (a)(1))

13

14   32. The Plaintiff resides in Arizona and the other Defendants are citizens of this district and/or de

15       facto citizens of this district.

16   33. Thus, the parties have complete diversity of citizenship.

17   34. To qualify for federal court under complete diversity of citizenship, the amount in controversy

18       must exceed the sum or value of $75,000, exclusive of interest and costs (28 U.S.C. § 1332(a)

19       (2014)).

20
21   35. The determination of the amount in controversy for federal subject matter jurisdiction is an issue

22       decided under federal law.  14AA FEDERAL PRACTICE AND PROCEDURE § 3702 (4th ed.

23       2014) [hereinafter "FEDERAL PRACTICE"]. See Horton v. Liberty Mut. Ins. Co., 367 U.S. 348,

24       352 (1961).

25
                                            10
26   **PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF
     CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION;
     NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL;
     UNJUST ENRICHMENT; and ABUSE OF PROCESS**

36. Federal courts will, however, look to applicable state law to determine the nature of the plaintiff's substantive claim and related damages. FEDERAL PRACTICE § 3702. See Horton, 367 U.S. at 352-353.

37. Numerous courts, including the United States Supreme Court have held that the amount in controversy for jurisdictional purposes is measured by the direct pecuniary value of the right that the plaintiff seeks to enforce or the value of the object that is the subject matter of the suit. FEDERAL PRACTICE § 3702.5. See Hunt v. Washington State Apple Advertising *Com'n*, 432 U.S. 333, 97 S.Ct. 2434, 53 L. Ed. 1067 (1947).

38. The direct pecuniary value of the right is simply an estimate of the total amount in dispute rather than an assessment of liability. Lewis v. Verizon Communications, Inc., 627 F.3d 395, 400 (9th Cir. 2010).

39. The amount in controversy is determined without considering accrued or accruing interest or the costs associated with the lawsuit. (28 U.S.C. § 1332(b))

40. Courts have held that collateral effects will not be taken into account when calculating the amount in controversy. FEDERAL PRACTICE § 3702.5. See Healy v. Ratta, 292 U.S. 263, 267 (1934) ("the collateral effects of the decree, by virtue of stare decisis, upon other and distinct controversies, may not be considered in ascertaining whether the jurisdictional amount is involved, even though their decision turns on the same question of law."). See also New England Mortg. Sec. Co. v. Gay, 145 U.S. 123, 130 (1892) ("It is well settled in this court that, when our jurisdiction depends upon the amount in controversy, it is determined by the amount involved in

11

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

the particular case, and not by any contingent loss either one of the parties may sustain by the probative effect of the judgment, however certain it may be that such loss will occur.").

41. The amount in controversy may include compensatory damages including general and special damages such as pain and suffering and out of pocket loss. The amount in controversy may also include punitive damages. Anthony v. Security Pac. Fin. Servs., Inc., 75 F.3d 311, 315 (7th Cir. 1996); Watson v. Blankinship, 20 F.3d 383, 386-387 (10th Cir. 1994).

42. The $400,000 owed in prejudgment interest by the Defendants is not part of the formula to determine whether the Plaintiff has sustained over $75,000 in damages.

43. However, with over US $2 million owed by Defendants on the two Properties, that was originally supposed to be paid by January 2019, the Plaintiff asserts that the amount in controversy well exceeds the sum or value of $75,000.

44. Therefore, the Plaintiff asserts that this case qualifies for this federal United States District Court under complete diversity of citizenship.

**Allegations regarding the Las Olas partnership, related Partners and Entities, Agency, Co-Mingling of Assets and Liabilities between Partners and their Entities, and Alter Ego Liability**

45. Mr. David Maksymuik signed the original two offers/purchase contracts for his Las Olas partnership with Mr. Russ in 2018. The Plaintiff accepted the purchase offers, forming contracts and a meeting of the minds between the parties.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

46. Though Mr. Maksymuik and Mr. Russ act and run their partnership as if they were two individual partners, they have used many names and apparent entities for the Las Olas development partnership whose web site is www.lasolasecuador.com.

47. For simplicity, the Plaintiff shall refer to the Maksymuik/Russ partnership ("the Partnership") to construct and sell 1620 residences on 1650 acres and construct and sell over 1500 properties as "Las Olas" and Mr. Russ and Mr. Maksymuik as "the Individual Partners", also listed as the "Founding Partners" on the Las Olas web site.

48. Las Olas, Mr. Russ, and Mr. Maksymuik are the "Purchasers."

49. However, the Individual Partners have played an elaborate shell game with the entities and corporate partners ("strategic partners") involved in the Las Olas development project.

50. Besides the "Founding Partners" (Russ and Maksymuk), Texas Fixtures and Bobby Castle Construction are listed as part of the Las Olas team, also as partners.

51. The partnership that the Plaintiff calls "Las Olas" is also called "Las Olas Ecuador" by Russ and Maksymuik.

52. Mr. Maksymuik lists "Las Olas Ecuador, Inc." in Texas as his employer. The Plaintiff could not find Las Olas Ecuador, Inc. in the Texas registry of companies, but assumes that Mr. Maksymuik and Mr. Russ use as "Las Olas Ecuador, Inc." domiciled in another jurisdiction for certain Las Olas activities and/or ownership.

53. Mr. Russ has made payments to the Plaintiff for his, Mr. Maksymuik's, and the Partnership's property purchases personally and via Bobby Castle Construction. The Plaintiff believes that when Mr. Russ used Bobby Castle Construction to make property payments to the Plaintiff, that

13

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Mr. Russ was attempting to reduce his tax liability and exposure. The Plaintiff believes that Bobby Castle Construction is a highly profitable enterprise, a nationwide builder of strip malls and retail stores for credit-worthy clients. The Plaintiff believes that what Mr. Russ and his wife Keli Russ should have done is paid higher taxes for and through Bobby Castle Construction for its profits, and then paid the Plaintiff for their personal property purchases for their Partnership with after-tax post-distribution money, or monies from personal savings. Rather, Mr. Russ and Ms. Russ treated the payments to the Plaintiff as a business expense of Bobby Castle Construction. Thus, Bobby Castle Construction has liability to the Plaintiff for the Las Olas partnership's debts both because Bobby Castle is a Las Olas partner, but also because Mr. Russ and Ms. Russ have co-mingled their personal accounts, assets, and liabilities with those of the Las Olas partnership and that of Bobby Castle.

54. Mr. Russ co-mingled funds between his personal accounts and that of Las Olas and that of his partnership with Mr. Maksymuik. Worse, upon information and belief, Mr. Russ sent the Plaintiff monies on multiple occasions that were loans to the Plaintiff but wrote them off as expenses for Bobby Castle Construction. The Plaintiff asserts that Mr. Russ, Las Olas, and Bobby Castle Construction are alter egos for one another, and at this point, Russ, Las Olas, Bobby Castle Construction, and the dozens of Bobby Castle Construction subsidiaries all are fully liable for each other's related liabilities (alleged herein).

55. The Plaintiff further alleges alter ego liability for Bobby Castle construction because officers of the corporation diverted corporate funds and/or assets to other than corporate uses that had no

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

1   legitimate business reason for Bobby Castle construction.  The Plaintiff is not a contractor and

2   has never worked on any Bobby Castle construction project.

3   56. Mr. Russ and Mr. Maksymuik have also played an elaborate shell game to attempt to dodge their

4   tax obligations to the United States Department of the Treasury and Canada Revenue Agency.

5   57. Part of that shell game involves Mr. Russ and Mr. Maksymuik setting up a Belize Foundation that

6   is the owner of the two Ecuadorian companies (Sociedad Anonima) that own their properties that

7   they are developing in Ecuador, which are actually for-profit activities.

8   58. Those two Ecuadorian companies own, or used to own, most or all the Las Olas land.  In this way,

9   the Individual Partners likely planned and attempted to avoid paying US and Canadian taxes on

10   their for-profit development activities.  Those activities have been highly profitable thus far, at

11   least on paper: Mr. Russ and Mr. Maksymuik likely only put a few million dollars of original cash

12   equity into their Las Olas partnership activities, but the value of their going concern is now over

13   US $58 million (Exhibit F, the summary page of the appraised value of Las Olas real estate, so

14   land alone is US $58 million.  Las Olas has other assets)

15   59. Upon information and belief, at least one payment from Mr. Russ towards the P2 and P3 purchases

16   came from Texas Fixtures and Interiors (a laptop accepted in lieu of cash, that Mr. Russ and the

17   Plaintiff agreed should be valued at US $700).

18   60. Upon information and belief, Mr. Russ has made payments to the Plaintiff for his, Mr.

19   Maksymuik's, and the Partnership's property purchases personally and via Texas Fixtures.  The

20   Plaintiff believes that when Mr. Russ used Texas Fixtures to make property payments to the

21   Plaintiff, that Mr. Russ was attempting to reduce his tax liability and exposure.  The Plaintiff

15

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION;
NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL;
UNJUST ENRICHMENT; and ABUSE OF PROCESS**

believes that Texas Fixtures is a profitable enterprise.  The Plaintiff believes that what Mr. Russ and his wife Keli Russ should have done is paid higher taxes for and through Texas Fixtures, and then paid the Plaintiff for their personal property purchases for their Partnership with after-tax post-distribution money, or monies from personal savings.  Rather, Mr. Russ and Ms. Russ treated the payments to the Plaintiff as a business expense of Texas Fixtures.  Thus, Texas Fixtures has liability to the Plaintiff for the Las Olas partnership's debts both because Texas Fixtures is a Las Olas partner (as per the Las Olas web site), but also because Mr. Russ and Ms. Russ have co-mingled their personal accounts, assets, and liabilities with those of the Las Olas partnership and that of Texas Fixtures.

61. Relatedly, with regard to the Plaintiff's state law claims under supplemental jurisdiction hereat, Texas courts will apply the alter ego doctrine to a corporation that is an alter ego of an individual (and/or a partnership).  Under Texas law, alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.  An alter ego relationship may be shown from the total dealings of the corporation and the individual.

62. Under Texas law, alter ego also would apply when there is such unity between corporation and partnership that the separateness of the corporation has ceased and holding only the partnership liable would result in injustice.  An alter ego relationship may be shown from the total dealings of the corporation and the partnership.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

63. In this case, there is unity between the Russ/Maksymuik Las Olas partnership and a variety of corporate shells (in some cases with the same beneficial ownership) that the partners use to hold property, receive money, and make payments on personal and Partnership obligations.

**Related allegations regarding Mr. Russ', Ms. Russ', Bobby Castle Construction's, Texas Fixtures, and Mr. Maksymuik's tax fraud**

64. Relatedly, Mr. Russ accepts cash payments from customers of Bobby Castle Construction (and likely for Texas Fixtures and Interiors, Inc.). Upon information and belief, Mr. Russ does not report those payments on his personal or business taxes. The Plaintiff believes his wife Ms. Keli Russ has knowledge of this, and she co-signs their personal tax returns. The Plaintiff believes these practices went on at least from 2017 through early 2020, and likely other years. 2017, 2018, 2019, and 2020 are relevant years of interest, at minimum.

65. Mr. Russ accepts BTC and Ethereum and other cryptocurrencies from customers of Bobby Castle Construction (and likely for Texas Fixtures and Interiors, Inc.). Upon information and belief, Mr. Russ does not report those payments on his personal or business taxes. The Plaintiff believes Mr. Russ' wife Ms. Keli Russ has knowledge of this, and she co-signs their personal tax returns.

66. Mr. Russ has made payments to the Plaintiff, to Edward Berr's company, and to Ms. Roden of over $200,000 related to his personal and partnership investments, but he has made them from Bobby Castle Construction. If those transactions remained in Bobby Castle Construction's

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

financials and were written off, the Plaintiff believes Mr. Russ and Ms. Russ would be committing felony tax fraud.

67. In doing so, Mr. Russ and Ms. Russ would be illegally shielding his business income and avoiding the paying of taxes.  What he should be doing, rather than paying me from Bobby Castle Construction, and writing those payments off as "expenses", is paying the taxes on his income at Bobby Castle Construction, paying himself from the business, and then wiring me money personally related to his personal investments.

68. Mr. Russ has a development project in Ecuador (https://lasolasecuador.com) that has had taxable events where the development should have been marked to market, because it has gone up in value.  Those events include the granting of building permits, where the value of the land that Mr. Russ beneficially holds has shot up from the few million or so of equity that Mr. Russ holds to ~US $58 million dollars.  Upon information and belief, there have been some land transfers where Mr. Russ and his partner did not represent the true current value of the Las Olas land (which is over US $58 million, as per Exhibit F).

69. Mr. Russ and his wife Keli purportedly hold only a 50% beneficial interest in this property, but Mr. Russ really should hold over 80% given the extra monies he has pumped into the partnership where his partner has not paid his share.

70. Mr. Russ and his wife Ms. Keli Russ have engaged in an elaborate scheme to defraud the IRS and the Treasury Department with their Belize Foundation hiding off-shore for-profit activity.

71. The Plaintiff doubts that Mr. Russ and Ms. Keli Russ are reporting the true value of their partnership holdings, which are now valued at over US $58 million.

18
**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

72. Mr. Russ, and his wife, and his business partner Mr. Maksymuik set up a Belize foundation – allegedly a non-profit foundation – which holds at least two Ecuadorian Sociedad Anonima as subsidiaries. Those companies hold the US $58 million of property that the Plaintiff believes Mr. Russ has not properly reported, nor the gains thereof for any relevant transfers.

73. The Plaintiff has, with Mr. Russ' permission, copies of the appraisal of this property (Exhibit F, the summary page, though the Plaintiff has the full appraisals of hundreds of pages).

74. In "burying" his for-profit development as a subsidiary of an alleged non-profit/Foundation, Mr. Russ is likely attempting to defraud the IRS and avoid paying tens of millions of dollars in capital gains and taxes.

75. The Ecuador entities have bank accounts. Mr. Russ may have filed his 5471s and his TD F 90-22.1s, for his foreign bank accounts, which have had millions of dollars go in and out of, but the Plaintiff doubts that Mr. Russ and Ms. Keli Russ are in full tax compliance, given how much time, energy, and expense Mr. Russ invests in attempting to evade his tax obligations.

76. Mr. Russ and his partner took a US $5 million loan in Ecuador and did not repay the loan. The lender has written off the loan and is recovering by foreclosing on some properties. Debt relief is a taxable event. The Plaintiff doubts that Mr. Russ, Ms. Keli Russ, and Mr. Maksymuik have reported this US $5 million that they beneficially received.

77. If the lender succeeds in foreclosing, they essentially will have bought those foreclosed properties from the Las Olas partnership for US $5 million. The Plaintiff doubts that Mr. Russ, Ms. Keli Russ, and Mr. Maksymuik have properly reported this income, including on relevant TD F 90-

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

1   22.1s, nor the monies going into their bank account on their 5471s.  The IRS has a 50% penalty

2   on underreporting on 5471s.

**Underlying Facts and Background Context: the Plaintiff becomes a developer in Ecuador**

78. The Plaintiff was a longtime information technology consultant who began to invest the money

he was making in Silicon Valley into real estate.

79. The Plaintiff had purchased over seventy (70) residential properties in California and next became

a residential real estate developer in many countries in Central and South America, including

Ecuador.

80. After selling out multiple developments in the Andes, including in Vilcabamba, the Plaintiff

began buying beach properties near Bahia de Caraquez, "Bahia".

(https://www.planetandes.com/ecuador/pacific-coast/manabi/bahia-de-caraquez/)

81. Bahia is a town of 25,000 residents, located on the south side of the Rio Chone river, where it

meets the Pacific Ocean.

82. Bahia features good restaurants, clean, paved roads, and a museum of archeology and art.

83. Back around 2005 and 2006, when the Plaintiff began to come to the Bahia are, beach-front

properties in the area were available for reasonable prices well under $1/sq. meter.

84. The Plaintiff purchased nine kilometers of beach in the area and began to plan a combination of

land banking and sustainable development from the southern end of Bahia to San Clemente.

85. The Plaintiff asked his real estate agent, Wayne Stauble, to map out the entire area from Bahia to

San Clemente.

20
**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION;
NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL;
UNJUST ENRICHMENT; and ABUSE OF PROCESS**

86. Mr. Stauble and the Plaintiff mapped out all properties from north of the Pajonal road to Bahia in one numbering system, and another system for all properties south of the Pajonal Road to San Clemente.

87. This was an intermediate step to acquiring many of those properties by contacting their owners and entering in to purchase contract.

**The Plaintiff acquires a 2 kilometer beach property and subdivides it, creating P1, P2, and P3**

88. Early in that process of developing sustainable communities along Ecuador's coast, the Plaintiff had acquired one property in particular, just south of the Pajonal road to the beach, which had two kilometers of beach, a shrimp farm and factory, and an airstrip.

89. The Plaintiff had acquired that property from Mr. Jeff Barringer and his wife, who had graciously seller-financed the acquisition.

90. The Plaintiff then subdivided that property into three roughly-equal sized properties, each of which had approximately 700 meters of beach.

91. The northern-most of those three properties shall be referred to as Property 1, or "P1".

92. The middle of the three properties is "P2", and the southern-most is "P3."

93. The Plaintiff paid the Barringers off for Property 1 (using the Edward Berr financing with a syndicated mortgage, funded by twenty-seven investors of Mr. Berr's, and by Ms. Laura Roden, a friend of the Plaintiff's).

94. The Plaintiff still owes Mr. Barringer approximately US $542,545 as of August 1st, 2022 on the southern-most two (2) Properties, P2 and P3 (Exhibit G, Promissory Note to Mr. Barringer).

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

**The Emergence of Las Olas and Mr. Russ and Mr. Maksymuik's purchase of P1/P2/P3**

95. North of P1, Mr. Russ' and Mr. Maksymuik's Las Olas real estate development partnership purchased over three thousand one hundred and two acres for its championship 18-hole golf course, 1620 residences, luxury spa and resort, and other amenities.

96. In 2017, while visiting Bahia, the Plaintiff had lunch with Mr. Maksymuik, who expressed an interest (on Mr. Russ' and his behalf) in purchasing all three properties from the Plaintiff.

97. The Plaintiff stated that he would sell each of the properties for US $1,236,000 (this number is from memory. The Plaintiff calculated the debt he had to Mr. Barringer per property at the time, believed to be $236,000, and added the million dollars he wished to clear on the southern-most properties).

98. The Plaintiff stressed to Mr. Maksymuik that he was financially challenged at that moment, and that he needed a quick close on at least one of the two properties if Mr. Maksymuik was serious.

99. Mr. Maksymuik told the Plaintiff that though he and Mr. Russ were quite familiar with the properties due to their ownership of many neighboring properties that it would take some time for a close of a purchase.

100. The Plaintiff then asked if it would be possible for Mr. Maksymuik or Mr. Russ to loan him some money until they could do a formal contract or get to a property purchase close.

101. Mr. Russ agreed to lend the Plaintiff some money to tide him over until the parties could formalize Mr. Russ' and Mr. Maksymuik's purchases of P1, P2, and P3.

102. Mr. Russ subsequently lent the Plaintiff US $10,000, which Mr. Russ sent in two wires of $5,000 each in 2017.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

**Mr. Russ and Mr. Maksymuik's contractual purchase of P1**

103.    In 2017, the Plaintiff was a California resident.

104.    In late August 2017, Mr. Russ and Mr. Maksymuik flew out to California for several days of meetings with the Plaintiff (in Moss Beach, CA and San Mateo, CA) to arrange the property purchases.

105.    Because the Las Olas development was north of the Plaintiff's properties, Mr. Russ and Mr. Maksymuik decided to first buy P1, before moving on to P2 and P3.

106.    At the time, P1 had a mortgage on it that was syndicated between twenty-eight investors who each owned a "slice" of the mortgage.

107.    Russ and Maksymuik wished to make a series of payments first to pay off the mortgage, and then to the Plaintiff, who, in his abject poverty, was quite flexible and willing to seller-finance that transaction.

108.    Russ and Maksymuik represented that Las Olas would have millions in sales by calendar year 2018, and that they could quickly pay cash, in full, first for P1, and then for P2 and P3.

109.    (Or, in the worst case, they would break each million-dollar+ amount in to a few payments over a few months, financed by their cash flow).

110.    Before Mr. Russ and Mr. Maksymuik left California in early September 2017, Mr. Russ and Mr. Maksymuik, as buyers for P1, and the Plaintiff, as the former beneficial owner of P1, had signed a contract by which Russ and Maksymuik would buy P1 from the Plaintiff over a period of sixteen (16) months.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

111.   (The Plaintiff negotiated a deal - on behalf of Mr. Russ and Mr. Maksymuik - with the holders of the mortgage debt on P1 to enable the purchase).

112.   Over the first thirteen (13) months, starting in September 2017, Russ and Maksymuik would buy out the syndicated mortgage (held by Mr. Berr investors and Ms. Roden) and advance $60,000 in payments to the Plaintiff.  (The Defendants performed and met their obligations under that part of that contract)

113.   Then, over the final three (3) months, in late 2018 or no later than January 2019, the Purchasers would either pay off the Plaintiff in full, or work out a series of short-term Payments to cash out the Plaintiff'

114.   Each month from September 2017 to October 2018, Mr. Russ wired a set amount to the mortgage holders.

115.   By October 2018, Mr. Russ had paid off the mortgage on P1, fully performing on his contractual obligations.

116.   The P1 purchase contract is not the subject of this particular legal complaint.

117.   However, P1 details are included for context as to what occurred in parallel with P2 and P3.

118.   Mr. Russ and Mr. Maksymuik were unable to close on the purchase of P1 in late 2018 as expected and as per the contract.

119.   One reason for that is that contrary to the contract that the Plaintiff signed with Edward Berr, Mr. Berr had refused to rescind the first mortgage that he and his investors had on P1.

120.   Thus, Mr. Russ and Mr. Maksymuik's representations that they didn't have the money to close on the purchase of P1 in late 2018 were not the only reason that they were unable to purchase P1.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

**Russ and Maksymuik's misuse of legal processes to attempt to steal P2 and P3 from the Plaintiff**

121.    The Plaintiff has recently learned about events that happened years ago.

122.    Mr. Barringer, the mortgage-holder on P2 and P3, is one of the parties that is willing to truthfully testify about these events.

123.    Mr. Barringer has supplied some evidence to the Plaintiff.

124.    Most real estate developers purchase the land that they develop.

125.    Beginning in 2010 or so, Mr. Russ and Mr. Maksymuik desired to purchase P2 and P3.

126.    In approximately 2010, Mr. Maksymuik contacted the Plaintiff and requested an in-person meeting.

127.    The Plaintiff met with Mr. Maksymuik, who demanded that the Plaintiff sell Las Olas P2 and P3 at the Plaintiff's original cost.

128.    The Plaintiff had no interest in doing so, and thus Mr. Maksymuik informed the Plaintiff that the Plaintiff would not be welcome to play on the Las Olas golf course (as if the Plaintiff would care about that).

129.    The part that the Plaintiff has recently learned about is what Mr. Maksymuik did after that, with the knowledge of Mr. Russ.

130.    Mr. Maksymuik was willing to commit numerous crimes to attempt to steal P2 and P3 from the Plaintiff.

131.    As difficult as it is to believe, Mr. Maksymuik then contacted Mr. Barringer and the Plaintiff's attorney, Ms. Floridalva Zambrano, and bribed Mr. Barringer and Ms. Zambrano to carry out the following scheme:

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

132.    Mr. Barringer, with the help of Ms. Zambrano's law office, would foreclose on the Plaintiff's properties, but Ms. Zambrano would fake a proof of service so that the Plaintiff would be unaware of the foreclosure. Then, Mr. Maksymuik and Las Olas would purchase P2 and P3 from Mr. Barringer for the cost of the Plaintiff's debt. In this way, Mr. Barringer would have his mortgage cashed out, and Mr. Maksymuik would effectively steal the properties from the Plaintiff on behalf of Las Olas, with no consideration.

133.    The reason that Mr. Maksymuik were willing to commit crimes and bribe people to do their bidding is that the Las Olas properties that Mr. Maksymuik had purchased were mostly in a valley near the ocean. The Plaintiff had purchased the beach properties in front of them, and the Las Olas partners wanted to be selling that beach lifestyle, and beach properties, to Las Olas customers.

134.    However, the scheme didn't work out as planned.

135.    Most of the scheme played out the way these criminal Defendants planned it. Mr. Barringer, with the help of Ms. Zambrano's law office, initiated a collection and foreclosure lawsuit against the Plaintiff's company (represented by Ms. Zambrano at the time).

136.    Mr. Barringer used another attorney in Ms. Zambrano's law office as his attorney, and they successfully faked a proof of service and were able to obtain a default, as the Plaintiff was unaware of this completely fraudulent lawsuit.

137.    However, Ms. Zambrano forgot that foreclosure was the objective, so Mr. Russ and Mr. Maksymuik and their Las Olas partnership could effectively steal P2 and P3 from the Plaintiff.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

138.   The requested relief from Ms. Zambrano's law office was for a judgment against the Plaintiff, which Mr. Barringer successfully obtained.

139.   Ms. Zambrano forgot to foreclose on P2 and P3 for Mr. Barringer, and thus Mr. Russ and Mr. Maksymuik were not able to steal P2 and P3 from the Plaintiff without paying him, by only paying the amount of the Plaintiff's debt to Mr. Barringer, and the cost of the various bribes they had to pay.

140.   They say truth is stranger than fiction, but all the above is well-documented in emails with Mr. Russ, Mr. Maksymuik, Mr. Barringer, Ms. Zambrano, and other parties, in Court records, and in the judgment obtained for Mr. Barringer, with the legal fees to Ms. Zambrano's law office by Mr. Russ, Mr. Maksymuik, and their Las Olas partnership.

141.   Hence, the Plaintiff has added a cause of action for Abuse of Process to this legal complaint.

142.   A suit for abuse of process in Texas must be based on an allegation that the other parties misused a process for a collateral purpose.  In this case, the Defendants misused legal processes to attempt to steal two properties from the Plaintiff without paying consideration to the Plaintiff.

143.   In Texas, the elements of an abuse-of-process claim are (1) the defendant misused a regularly issued process—e.g., "the issuance of a citation or a writ"—for a purpose not lawfully warranted by that particular process, (2) the defendant had an ulterior motive or purpose for misusing the process, and (3) the plaintiff sustained damage from the irregularity. Detenbeck v. Koester, 886 S.W.2d 477, 480 (Tex. App.-Houston [1st Dist.] 1994, no writ); Tandy Corp. v. McGregor, 527 S.W.2d 246, 249 (Tex. App.-Texarkana 1975, writ ref'd n.r.e.);

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

144.    Only after the Defendants' attempt to steal P2 and P3 failed, did Mr. Russ and Mr. Maksymuik

make their offers to purchase P1 (separately), and the Properties (P2 and P3).

145.    Though the Defendants have the means to pay the Plaintiff, since they owned land valued at

US $58 million, perhaps the Defendants taking control of the Plaintiff's property with the

Plaintiff's power of attorney, and then not paying him over US $2 million they owe him, is another

attempt to steal these same Properties?

**Mr. Russ and Mr. Maksymuik's commitment to purchase P2 and P3**

146.    In this section, the Plaintiff further explains this part of the case summary: "The Plaintiff

formerly owned a company that owned two beach properties ("the Properties", or "P2 and P3").

The Plaintiff had sold the properties to the Defendants (with the company if they so desired), as

per the original two written contracts formed between the parties and early modifications.

(Defendants also committed to buying a neighboring property, P1, from a different company of

the Plaintiff's).  All three purchases were to close in December 2018 or January 2019."

147.    Mr. Maksymuik, as agent for Mr. Russ and for their Las Olas partnership, provided written

purchase offers for P2 and P3 in 2018.

148.    The purchase price for P2 was US $1,236,000 (from memory; the Plaintiff does not have the

written contract in his possession).

149.    The purchase price for P2 was US $1,236,000 (from memory; the Plaintiff does not have the

written contract in his possession).

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION;
NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL;
UNJUST ENRICHMENT; and ABUSE OF PROCESS**

150.   The Plaintiff accepted both offers in writing, thus forming contracts with Russ and Maksymuik and their Las Olas partnership.

151.   Though the Defendants were familiar with P2 and P3, they did some due diligence to ensure the Plaintiff's former company still held title.

152.   In 2018, Mr. Maksymuik informed the Plaintiff that title was still as expected and that he and Mr. Russ would complete the purchase of P2 and P3 (for their Las Olas partnership), on the same schedule as the P1 purchase, closing no later than January 2019.

153.   The buyers were quite familiar with the Plaintiff's properties near the rest of their land holdings and definitively committed to the purchase.


**The Plaintiff fully performed, providing his POA in 2018 for the Purchasers' transfer of title**

154.      This section further explains this part of the case summary: "In 2018, the Plaintiff traveled to Ecuador, in part to provide his notarized power of attorney in favor of Defendants' company so that Defendants could effectuate the transfer of title/ownership of the Properties (and also of P1).  Mr. David Maksymuik was left in charge of effectuating the transfer of title/ownership, with the help of attorneys.  Upon information and belief, Defendants transferred the title/ownership to the Properties in early 2019.  Purchasers have had control of the properties via the Plaintiff's power of attorney since 2018.  Thus, all that remained to 'close' the Defendants' purchases of the Properties was for the Defendants to pay the remaining amounts due."

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

155.     Because the Plaintiff was getting the $5000 per month towards the Purchasers' P1 purchase, and the mortgage holders were also getting paid on time, the Plaintiff felt he could trust the Purchasers.

156.     In 2018, the Plaintiff travelled to Ecuador and provided his power of attorney in favor of Mr. Maksymuik's company, in part so that Mr. Maksymuik could effectuate the transfer of title/ownership.

157.     The Plaintiff gave the Purchasers the option of purchasing either the Properties or the company that owned the Properties.

158.     However, the company that owned P2 and P3 was not in good standing, as it had not made its tax filings.

159.     Mr. Maksymuik wanted, for P1 in a related purchase contract, to buy out the mortgage, and foreclose on the property, as one way to avoid the expense of cleaning up and updating the tax filings for the company that owned the properties.

160.     In 2018 Mr. Maksymuik's plan was to use the same strategy for P2 and P3, as well.

**The Purchasers Are Unable to Close in January 2019 and Why**

161.     However, for all three properties, P1, P2, and P3, Russ and Maksymuik stated in January 2019 (when the purchases were supposed to close) that they didn't have the money, were still committed to purchasing, but would need more time.

162.     The reason stated by Russ and Maksymuik that they could not pay for the Properties (P2 and P3) as well as P1 in January 2019, was that they expected to get millions of dollars from the sale

30

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

of properties in their Las Olas development, but things were progressing much more slowly than expected.

163.    Since then, Mr. Russ has made a series of lulling promises, that he would pay for the Properties his partner got control of on their behalf back in 2018 with the Plaintiff's power of attorney.

164.    The Plaintiff offered many times to unwind the transactions if Mr. Russ could not pay (and work out fair compensation for all the Plaintiff has endured and lost due to not having the money that the Purchasers were due to pay).

165.    The most recent series of promises by Mr. Russ, where he expected to be able to pay in full, or close, occurred in April 2022, May 2022, and June 2022.

**Payments made to the Plaintiff; what is still owed**

166.    This section further explains this part of the Case Summary: "However, the Defendants have breached their contracts by not paying the Plaintiff in full. The Defendants have only made approximately $132,700 of payments, per the Plaintiff's and Mr. Russ' joint accounting, across all three properties (P1, P2, and P3). Per Mr. Russ' and Plaintiff's agreed accounting and allocations of payments, the Defendants have paid $44,233 towards P2 and $44,233 towards P3. Mr. Russ, as agent for his partner Mr. Maksymuik and their partnership, has made many lulling promises, has made many promises to pay, and has provided loans to the Plaintiff which were due to unwind when Defendants had made their full payments owing."

167.    Mr. Russ has made a series of payments and loans to the Plaintiff. The loans were supposed to unwind at the promised close of the purchases of P1, P2, and P3.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

168. Exhibit D has a summary of the payments from Mr. Russ to the Plaintiff related to his purchases of P1, P2, and P3 in 2017, 2018, 2019, 2020, 2021, and 2022, which totaled $132,700.

169. The Plaintiff invested significant time with Mr Russ to put together this accounting, which they both have agreed is correct as far as all records they could find.

170. Mr. Russ made payments made and loans relating to P2 while making lulling promises of $44,233. Mr. Russ has made payments and advanced $44,233 to the Plaintiff for P3, as well, while making those lulling promises of full payment.

171. Mr. Russ has therefore paid, on behalf of Defendants, US $88,466 towards the $2,472,000 owed for P2 and P3.

172. Therefore, the Defendants still owe US $2,383,534 as of the promised January 2019 close.

173. To calculate prejudgment interest owed, let's use the date most favorable to Defendants, January 30th, 2019.

174. It appears that pre-judgment interest in Texas is set as 5% simple interest. If that is correct, then Defendants owe another $436,981.23 in prejudgment interest as of September 30th, 2022, or a total of $2,820,515.23 base damages including prejudgment interest.

175. The Purchasers have had control of P2 and P3 since 2018, with the Purchasers' power of attorney. Upon information and belief, they transferred title in late 2018 or early 2019. Mr. Maksymuik committed to transferring the title by then; he also committed to paying for the Properties in full by January 2019 or working out a payment plan by January 2019.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

176.   Since the Plaintiff has fully performed, all that the Purchasers needed to do to complete the closing and be done with the purchase transactions for the two Properties was pay the Plaintiff or his company the rest of the monies owed.

**Most recent promises to pay, most recent oral contracts (documented in writing).**

177.   The most recent promises to pay amounts owing in full came in April 2022, May 2022, and June 2022, forming new oral contracts at that point, including some documented in writing (including Exhibit E).

178.   In April, May, and June 2022, Mr. Russ insisted that he was about to get millions of dollars "imminently" and "any day now" from an investment he had made, and then he could either pay the Plaintiff in full or pay a substantial amount and work out the rest.

179.   About four months ago, in early June 2022, Mr. Russ informed the Plaintiff in a phone call once again that he expected to get a very significant amount of money imminently and "any day now", with which he could cash the Plaintiff out.

180.   Unfortunately, in the same call, Mr. Russ informed the Plaintiff that if that large amount of money did not arrive, Mr. Russ would be unable to complete the payments for the Properties that he and his partner have controlled for four years and transferred title to (or committed to doing so) over three years ago.

181.   The Plaintiff informed the Mr. Russ that since he was now repudiating the contract and refusing to pay for the Properties, that he would be forced to take legal action.

182.   Mr. Russ was to call if he got the money or wished to work something out.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

183. That phone call is documented in Exhibit E.

184. Mr. Russ did not call and is apparently not going to pay any more monies willingly.

185. Mr. Russ has now breached yet again with his "imminent", "within days" payments in full or close.

186. Mr. Russ, as agent for his partner, their partnership, and his and his partner's companies, has also repudiated the parties' contract and/or his desire or ability to pay what he and they owe.

187. For Mr. Russ to say he was not going to pay the Plaintiff, four years after he and his business partner took control of the Plaintiff's properties is despicable.

188. Mr. Russ said he was not going to pay the Plaintiff, over three years after his business partner said he would handle the transfer of title and ownership via the Plaintiff's power of attorney.

189. Mr. Russ said he was not going to pay the Plaintiff, over three years after (Plaintiff believes) Mr. Russ and his business partner have owned the Plaintiff's former properties. The Plaintiff finds this reprehensible.

190. The Plaintiff hasn't even received 4% of what the Purchasers promised to pay. How is this different from another attempt by the Purchasers to steal the Plaintiff's property, or at least 96% of its value?

191. Once again Mr. Russ and Mr. Maksymuik are attempting to steal the Properties from the Plaintiff. They have transferred title (or said they would by January 2019, with the Plaintiff's power of attorney) but refuse to provide the consideration, the amount owing.

192. The Defendants owe the Plaintiff over US $2 million before pre-judgment interest, consequential damages, and the Plaintiff's requested exemplary damages, given the extreme

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

circumstances herein.    The exact amounts of base damages and pre-judgment interest are documented above and also documented below in the Breach of Contract count, count I.

**Ramifications of the Partners' continuing series of Breaches**

193.    Unfortunately, the Partners' continuing series of breaches and not closing on their contractually-committed purchases (by paying the Plaintiff for the Properties already in their control) has resulted in a number of ramifications for the Plaintiff.

194.    The Plaintiff should have over two million dollars, or at least payments towards such, beginning years ago (a lot more than the US $88,466 he has received towards P2 and P3, less than 4% of what was originally owing).

195.    Due to the Partners' breaches of contract, the Plaintiff is entitled to consequential damages, and the consequences are significant, both on the downside and on the potential personal and business collateral opportunities that the Plaintiff should have engendered over the past years.

196.    Beginning with the downside consequences, until fairly recently, the Plaintiff has been living in relatively abject poverty, without enough money to pay his bills and support his business pursuits.

197.    For the last couple months, the Plaintiff has had some monies, allowing him to focus on his new business, raising money for real estate developers and for owner/operators of mines.

198.    By the time of our anticipated jury trial in 2024, the Plaintiff will have demonstrated what sort of income he could have generated with relatively small amounts of money for some travel, and some time to focus on business opportunities.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

199.    The Defendants' falling short of their commitments and breaching their contracts has been a significant factor in the Plaintiff not having the sort of income he could have had (for 2019, 2020, 2021, and 2022).

200.    While the Plaintiff appreciates the payments and loans made by Mr. Russ, they are but a tiny fraction of monies (under 4%) the Plaintiff was originally supposed to have received long ago (by January 2019).

201.    The Plaintiff has not been able to afford to hire an attorney for the benefit of his three minor boys, who should have their father in their lives… the Plaintiff, a father to three boys, should have the joy and responsibilities of fatherhood in his life, and therefore a meaningful existence.

202.    The Plaintiff also has not been able to pay Mr. Barringer off, the holder of the mortgages on the Properties.

203.    The Plaintiff now owes Mr. Barringer $542,545.08 as of October 1st, 2022 (Exhibit G, Promissory Note with Plaintiff's new balance as of June 1st, 2022).

204.    In not being able to pay Mr. Barringer off in January 2019 at the promised close date, the Plaintiff has accumulated another $150,000 or so of accrued interest owed to Mr. Barringer on the mortgages on the Properties, adding to his costs (and the damages sustained by the Defendants' breaches and more recently, Defendants' repudiations after they already have title to the Properties, and have controlled them since 2018).

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

**Promissory Estoppel**

205.    Under Texas law, the elements of promissory estoppel are: (1) a promise; (2) foreseeability of reliance thereon by the promisor; and (3) substantial reliance by the promisee to his detriment. MetroplexCore, L.L.C. v. Parsons Transp., Inc., 743 F.3d 964, 977 (5th Cir. 2014) (citing English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983)). To show detrimental reliance, "a plaintiff must show that he materially changed his position in reliance on the promise." Motten v. Chase Home Fin., 831 F. Supp. 2d 988, 1002 (S.D. Tex. 2011)

206.    Here, Mr. Russ, Mr. Maksymuik, and their Las Olas partnership ("the Purchasers") entered into two written contracts to purchase the Properties (P2 and P3) and the parties agreed that the Purchasers would pay for the Properties by January 2019.

207.    After the Plaintiff provided his power of attorney in 2018 to Mr. Maksymuik's company so that Mr. Maksymuik and his attorneys could effectuate the transfer of title/ownership, all that remained to 'close' on the purchases of P2 and P3 was for the Purchasers to pay for the Properties.

208.    At that point, the commitment was for the Purchasers to pay for the Properties in the immediate future, as significant Las Olas sales were "imminent."

209.    Thus, in the context of promissory estoppel, the original promise was to purchase the Properties, and then the updated promise was to pay for the Properties already in the control of Defendants and already transferred.

210.    The Plaintiff relied on those promises to his detriment, as he could not sell the Properties. The Plaintiff, a real estate developer by former profession, also could not subdivide the Properties and sell them.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

211. Real estate has a concept, the "highest and best use" for a property (Exhibit B).

212. If the Plaintiff had developed P2 and P3 by starting with a residential subdivision, he would have eventually received over US $20 million of revenue, selling beach lots at $300,000 per lot, as Las Olas has done, next door.

213. If the Plaintiff sold packages like Las Olas next door (c.f. Exhibit C, Las Olas lot packages sold in the million-dollar range), he would eventually have over US $50 million of revenue from developing P2 and P3.

214. In the Partners' tying up the properties (and then getting the Plaintiff's power of attorney to control them and to transfer title), the Plaintiff was deprived of the opportunity to sell the Properties to someone else.

215. In the Partners' tying up the properties (and then getting the Plaintiff's power of attorney to control them and to transfer title), the Plaintiff, a former real estate developer, was deprived of the opportunity to monetize them himself by subdividing the Properties into hundreds of residential lots at the beach, that he could have sold, garnering tens of millions of dollars.

**Threatened legal action by Mr. Barringer including foreclosure of P2 and P3**

216. However, in the meantime, even worse disasters loom on the horizon.

217. The Plaintiff has knowledge of Mr. Barringer hiring an attorney to foreclose on the properties.

218. Indeed, P2 and P3 were in foreclosure.

219. Mr. Barringer has recently threatened further legal action against the Plaintiff (Exhibit H, email from Mr. Barringer)

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

220.    That, and Mr. Russ' June 2022 repudiation (documented in Exhibit E), prompted the instant legal complaint.

**Further lost collateral opportunities**

221.    In the past, the Plaintiff had a history of raising capital as a former real estate broker and mortgage broker and consultant.

222.    He believes that with some financial stability, he could have made significant compensation raising money for clients, including real estate developers.

223.    In fact, the Plaintiff had one such opportunity in 2018 and 2019 in Korea, where he negotiated a US $7 million fee, the first of four fees and raises that were agreed to with a Korean client, three of which were quite possible to effectuate in the then-market.

224.    Unfortunately, due to Plaintiff's lack of resources, he could not complete such assignments.

225.    The proximate cause of the Plaintiff's lack of resources are the breaches of the Defendants.

**Righting the Scales of Justice**

226.    The Plaintiff has not heard from Mr. Russ, but he believes that Mr. Russ has the resources to meet his obligations and honor his commitments.

227.    More germane to the processes at hand, Mr. Russ has the resources to pay for the consequences of not doing so and the damages the Partners have caused.

228.    The Plaintiff, unfortunately, has been left with no choice but to file this legal complaint in hopes that justice can be served.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

1

**Jury trial**

2    229.   Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to

3         a jury trial for his Constitutionally-protected petitioning rights.  (Also, as per Fed. R. Civ. P

4         38(b)).

5

6    230.   The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all

7         triable facts and issues related to his current causes of action and any facts, issues, requests,

8         and/or causes of action that the Plaintiff or his future attorney may add within the timelines

9         allowed by this Court.

10

11                                    **Count I – Breach of Contract**

12

13

14   231.   The Plaintiff realleges paragraphs 1-230 as if fully set out herein.

15   232.   The Plaintiff entered into valid, binding contracts with Mr. Russ and Mr. Maksymuik for the

16        Partners to purchase P2 and P3.

17   233.   The Plaintiff fully performed and there were no issues in due diligence.

18   234.   There is no contingency and no LD ("liquidated damages") by which the Partners can now

19        pull out, four years later, after four years of broken promises, four years after they took over

20        control of the Properties.

21

22   235.   There are actually a multitude of contracts the Purchasers have breached.  The Purchasers first

23        were modifying the contracts, and they have breached the original contract and the modifications

24        thereof.

25

26
**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF
CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION;
NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL;
UNJUST ENRICHMENT; and ABUSE OF PROCESS**

236.    After the Plaintiff gave his power of attorney in 2018 so that the Purchasers could transfer title – which they said they would do by January 2019 – Mr. Russ, as agent for Mr. Maksymuik and their partnership, has made a series of payments and loans to the Plaintiff, towards all three property deals, including the two that are the subject of this legal complaint (P2 and P3).

237.    Those payments have continued into 2022.

238.    Many more contracts were formed with each promise to pay made (by both Individual Partners through early 2019, and then by Mr. Russ, as agent for Mr. Maksymuik and their partnership, after early 2019).

239.    Mr. Russ and Mr. Maksymuik breached the parties' contract by refusing to pay Plaintiff the US $2,472,000 owed (other than the $88,466 received towards P2 and P3)

240.    The Purchasers have breached the original contract, including modifications thereof, by not paying and by not paying on time.

241.    The most recent promises to pay were in April 2022, May 2022, and early June 2022, just before Mr. Russ' repudiation.

242.    The Purchasers have also breached a series of oral contracts formed (Mr. Russ' promises to pay) by not paying.  The most recent promises to pay "imminently" and "any day now" came in April 2022, May 2022, and June 2022.

243.    The most recent payments related to P2 and P3 continued into February 2022.

244.    Mr. Russ' repudiation of the two relevant contracts for P2 and P3, and all modifications thereof, and all oral contracts formed between 2019 and June 2022 with further accepted offers and promises to pay occurred on June 4th, 2022.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

245.   The Plaintiff has been damaged as a result of the Defendants' breaches and repudiation by losing US $2,472,000 that was supposed to be paid by January 2019, as well as prejudgment interest, and the consequences of not having that money (both business and personal).

246.   Exhibit D has a summary of the payments from Mr. Russ to the Plaintiff related to his purchases of P1, P2, and P3 in 2017, 2018, 2019, 2020, 2021, and 2022, which totaled $132,700.

247.   The total of Mr. Russ' relevant payments and loans relating to P2 and P3 while making lulling promises is therefore $44,233 towards P2, and the same $44,233 towards P3.

248.   Mr. Russ has therefore paid, on behalf of Defendants, US $88,466 towards the $2,472,000 owed for P2 and P3.

249.   Therefore, the Defendants still owe US $2,383,534 as of the promised January 2019 close.

250.   To calculate prejudgment interest owed, let's use the date most favorable to Defendants, January 30th, 2019.

251.   It appears that pre-judgment interest in Texas is set as 5% simple interest.  If that is correct, then Defendants owe another $436,981.23 in prejudgment interest as of September 30th, 2022, or a total of $2,820,515.23 base damages including prejudgment interest.

252.   To the extent that not all the oral contracts are in writing as well, those written contracts were formed impliedly-in-fact, with the parties' representations, and with the parties' behavior.

253.   Conjunctively and alternatively, to the extent that there are any technical deficiencies in any contracts, the Plaintiff asks this Court to apply a quasi-contract, using the principal of quantum meruit, in the interests of equitable justice, in his cause of action for Unjust Enrichment below (count VII).

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

254. All allegations and specific consequential damages to be fully proven at jury trial.

## Count II – Promissory Fraud

255. The Plaintiff realleges paragraphs 1-230 as if fully set out herein.

256. In 2017 and 2018, Russ and Maksymuik induced the Plaintiff to enter into the parties' contracts by representing that they fully intended to honor those contracts.

257. In 2017 and 2018, Russ and Maksymuik induced the Plaintiff to enter into the parties' contracts by representing that they had the ability to pay the Planitiff the millions of dollars they were offering.

258. In 2017 and 2018, Russ and Maksymuik induced the Plaintiff to enter into the parties' contracts by representing that they would pay the Plaintiff the $2,272,000 the Purchasers were offering.

259. We shall refer to the Partners' such representations over time as "the Representations."

260. As fraud must be pled with specificity and particularity. Maksymuik made his Representations over lunch in Bahia, and Russ and Maksymuik made some of their joint Representations in in-person meetings in California in late August (8/30/2017) and early September 2017 (9/1/2017).

261. The Plaintiff is lacking his emails and most of this documents from before January 2020, but once he serves discovery he will be able to plead with more specificity and particularity, including about Representations made in writing and/or oral Representations documented in writing.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

262.    Some of the Representations include Representations by Mr. Russ in April, May, and June 2022 that he would be able to pay the Plaintiff for the Properties in full (or close) over the phone. Phone records will show the exact dates and times of these calls.

263.    Russ knew at the time he made his Representations that he had no intention to honor his contracts with the Plaintiff, nor to pay him as promised.

264.    Indeed, Russ did not honor the contracts and did not pay the Plaintiff.

265.    Maksymuik knew at the time he made his Representations that he had no intention to honor his contracts with the Plaintiff, that he did not have the ability to pay, and that he would not pay the Plaintiff.

266.    Indeed, Maksymuik did not honor the contracts and did not make any payments.

267.    Russ made the early Representations for the express purpose of inducing the Plaintiff to rely.

268.    As Russ foresaw and intended, the Plaintiff reasonably relied on the Representations.

269.    The Representations were material in that the Plaintiff would not have entered into the contracts nor began to perform nor performed as much as he could in the circumstances without them.

270.    Maksymuik made the early Representations for the express purpose of inducing the Plaintiff to rely.

271.    As Maksymuik foresaw and intended, the Plaintiff reasonably relied on the Representations.

272.    The Representations were material in that the Plaintiff would not have entered into the contracts nor began to perform nor performed with his power of attorney for the transfer of the properties the circumstances without them.

44

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

273.   The Plaintiff has been damaged as a result of his reliance on the Representations by losing US $2,472,000 as of January 2019, as well as prejudgment interest, and the consequences of not having that money (both business and personal).

274.   All allegations and specific consequential damages to be fully proven at jury trial.

### Count III – Negligent Misrepresentation

275.   The Plaintiff realleges paragraphs 1-273 as if fully set out herein.

276.   Pleading in the alternative, at the time Russ made the Representations Russ was acting in his professional capacity and had a pecuniary interest in the underlying transaction.

277.   Pleading in the alternative, at the time Russ made the Representations Russ was acting in his professional capacity and had a pecuniary interest in the underlying transaction.

278.   Russ and Maksymuik failed to exercise due care in making the Representations.

279.   The Plaintiff justifiably relied on the Representations.

280.   The Plaintiff has been damaged as a result of his reliances on the Representations by losing US $2,472,000 as of January 2019, as well as prejudgment interest, and the consequences of not having that money (both business and personal).

281.   All allegations and specific consequential damages to be fully proven at jury trial.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

1

**Count IV – Promissory Estoppel**

2

3    282.    The Plaintiff realleges paragraphs 1-230 as if fully set out herein.

4
     283.    Mr. Russ, Mr. Maksymuik, and their Las Olas partnership ("the Purchasers") entered into two
5
             written contracts to purchase the Properties (P2 and P3) and the parties agreed that the Purchasers
6
7            would pay for the Properties by January 2019 (the "Original Promises")

8    284.    After the Plaintiff provided his power of attorney in 2018 to Mr. Maksymuik's company so

9            that Mr. Maksymuik and his attorneys could effectuate the transfer of title/ownership, all that

10           remained to "close" on the purchases of P2 and P3 was for the Purchasers to pay for the Properties.

11
     285.    At that point, the commitment was for the Purchasers to pay for the Properties in the
12
             immediate future, as significant Las Olas sales were "imminent." (the "Updated Promise")
13

14   286.    Thus, in the context of promissory estoppel, the Defendants' Original Promise was to purchase

15           the Properties.

16   287.    The Defendants' Updated Promise was to pay for the Properties that they already controlled

17           and transferred title to, imminently after January 2019.

18   288.    The Plaintiff relied on the Original Promise to his detriment, as he committed to sell the
19
             Properties to the Purchasers.
20
     289.    The Plaintiff relied on the Updated Promise to his detriment, as he gave control of the
21
22           Properties to the Purchaser via his power of attorney, so that Mr. Maksymuik could effectuate the

23           transfer of title/ownership.

24

25
                                                    46
26   **PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF
     CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION;
     NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL;
     UNJUST ENRICHMENT; and ABUSE OF PROCESS**

290.    In committing to sell and then selling/transferring the Properties, the Plaintiff, a real estate developer by former profession, also could not subdivide the Properties.

291.    In the Partners' tying up the properties (and then getting the Plaintiff's power of attorney to control them and to transfer title), the Plaintiff was deprived of the opportunity to sell the Properties to someone else.

292.    In the Partners' tying up the properties (and then getting the Plaintiff's power of attorney to control them and to transfer title), the Plaintiff, a former real estate developer, was deprived of the opportunity to monetize them himself by subdividing the Properties into hundreds of residential lots at the beach, that he could have sold.

293.    All allegations and the full extent of the damages to be fully proven at jury trial.

**Count V – Negligence (Mr. Russ and Mr. Maksymuik)**

294.    The Plaintiff realleges paragraphs 1-230 as if fully set out herein.

295.    Mr. Russ and Mr. Maksymuik originally had no duty to Plaintiff when they first met about sixteen (16) years ago.

296.    However, once Mr. Maysymuik, as agent for Mr. Russ and for their Las Olas partnership, received the Plaintiff's power of attorney in 2018 to effectuate the transfer of title and ownership of the Properties, the Purchasers had a fiduciary duty to the Plaintiff.

297.    The Purchasers also owed the Plaintiff a high duty of good faith, fair dealing, honest performance, and strict accountability.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

298. The Plaintiff is unsure that Mr. Maksymuik finished transferring the title/ownership of the Properties in late 2018 or early 2019 as promised (Mr. Maksymuik stopped responding to the Plaintiff some time ago).

299. Mr. Maksymuik either effectuated the transfer of title or should have effectuated the transfer of title.

300. The Purchasers should have met their promises and paid the Plaintiff for the Properties they have had control over for four (4) years now, and ownership.

301. In not paying the Plaintiff, the Purchasers breached their fiduciary duty to the Plaintiff.

302. The Purchasers breaching their fiduciary duty (by not paying the Plaintiff) was the proximate cause of the damages and financial harm to the Plaintiff.

303. All allegations and the precise amount of base damages shall be fully proven at jury trial.

**Count VI – Breach of Fiduciary Duty (Mr. Russ and Mr. Maksymuik)**

304. The Plaintiff realleges paragraphs 1-230 as if fully set out herein.

305. Mr. Russ and Mr. Maksymuik originally had no duty to Plaintiff when they first met about sixteen (16) years ago.

306. However, once Mr. Maysymuik, as agent for Mr. Russ and for their Las Olas partnership, received the Plaintiff's power of attorney in 2018 to effectuate the transfer of title and ownership of the Properties, the Purchasers had a fiduciary duty to the Plaintiff.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

307.   The Purchasers also owed the Plaintiff a high duty of good faith, fair dealing, honest performance, and strict accountability.

308.   The Plaintiff is unsure whether Mr. Maksymuik finished transferring the title/ownership of the Properties in late 2018 or early 2019 as promised (Mr. Maksymuik stopped responding to the Plaintiff some time ago).

309.   Mr. Maksymuik either effectuated the transfer of title or should have effectuated the transfer of title.

310.   The Purchasers should have met their promises and paid the Plaintiff for the Properties they have had control over for four (4) years now, and ownership.

311.   In not paying the Plaintiff, the Purchasers breached their fiduciary duty to the Plaintiff.

312.   The Purchasers breaching their fiduciary duty (by not paying the Plaintiff) was the proximate cause of the damages and financial harm to the Plaintiff.

313.   All allegations and the precise amount of damages shall be fully proven at jury trial.


## Count VII – Unjust Enrichment


314.   The Plaintiff realleges paragraphs 1-230 as if fully set out herein.

315.   The Plaintiff should not need the Unjust Enrichment cause of action, because Mr. Maksymuik signed two valid, binding contracts with the Plaintiff for Mr. Maksymuik, Mr. Russ, and their Las Olas partnership to purchase the Properties (P2 and P3) from the Plaintiff.

316.   The Plaintiff has therefore pled the Breaches of Contract causes of action above (Count I).

49

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

317.   However, in case there is or are technical deficiencies in the contracts and their modifications due to the statute of limitations (the original breach was January 2019) or for another reason, conjunctively and in the alternative, the Plaintiff pleads that the Defendants have been unjustly enriched.

318.   The Defendants have had control and the ability to control the Properties since 2018, due to the Mr. Maksymuik obtaining the Plaintiff's power of attorney in 2018 in order to effectuate the transfer of title/ownership of the Properies.

319.   The Defendants have, or should have, ownership of the Properties since early 2019.

320.   The Defendants have therefore received a benefit from the Plaintiff.

321.   That benefit was conferred to the detriment of the Plaintiff, who no longer controls or owns the Properties, and cannot sell them or borrow against them or develop them.

322.   The Defendants have not paid for the Properties.

323.   As a matter of fairness and equity, even if there is a technical deficiency in the contracts, the Defendants should pay for the Properties they've had control of for over four (4) years.

324.   The Defendants were supposed to pay the Plaintiff by January 2019, originally.

325.   If necessary, this Court should impose a quasi-contract upon the Defendants to pay the Plaintiff for the Properties, also using the principle of quantum meruit, as the Plaintiff had a reasonable expectation that the Defendants would pay for the Properties, as they had promised in writing and orally many times.

326.   All allegations and damages to be fully proven at jury trial.

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

**Count VIII – Abuse of Process**

327.    The Plaintiff realleges paragraphs 1-230 as if fully set out herein.

328.    As difficult as it is to believe, years ago, as the Plaintiff has recently discovered, Mr. Maksymuik contacted Mr. Barringer and the Plaintiff's then-attorney, Ms. Floridalva Zambrano, and bribed Mr. Barringer and Ms. Zambrano to carry out the following scheme:

329.    Mr. Barringer, with the help of Ms. Zambrano's law office, would foreclose on the Plaintiff's properties, but Ms. Zambrano would fake a proof of service so that the Plaintiff would be unaware of the foreclosure.  Then, Mr. Maksymuik and Las Olas would purchase P2 and P3 from Mr. Barringer for the cost of the Plaintiff's debt.  In this way, Mr. Barringer would have his mortgage cashed out, and Mr. Maksymuik would effectively steal the properties from the Plaintiff on behalf of Las Olas, with no consideration.

330.    The reason that Mr. Maksymuik were willing to commit crimes and bribe people to do their bidding is that the Las Olas properties that Mr. Maksymuik had purchased were mostly in a valley near the ocean.  The Plaintiff had purchased the beach properties in front of them, and the Las Olas partners wanted to be selling that beach lifestyle, and beach properties, to Las Olas customers.

331.    However, the scheme didn't work out as planned.

332.    Most of the scheme played out the way these criminal Defendants planned it.  Mr. Barringer, with the help of Ms. Zambrano's law office, initiated a collection and foreclosure lawsuit against the Plaintiff's company (represented by Ms. Zambrano at the time).

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

333.    Mr. Barringer used another attorney in Ms. Zambrano's law office as his attorney, and they successfully faked a proof of service and were able to obtain a default, as the Plaintiff was unaware of this completely fraudulent lawsuit.

334.    However, Ms. Zambrano forgot that foreclosure was the objective, so Mr. Russ and Mr. Maksymuik and their Las Olas partnership could effectively steal P2 and P3 from the Plaintiff.

335.    The requested relief from Ms. Zambrano's law office was for a judgment against the Plaintiff, which Mr. Barringer successfully obtained.

336.    Ms. Zambrano forgot to foreclose on P2 and P3 for Mr. Barringer, and thus Mr. Russ and Mr. Maksymuik were not able to steal P2 and P3 from the Plaintiff without paying him, by only paying the amount of the Plaintiff's debt to Mr. Barringer, and the cost of the various bribes they had to pay.

337.    They say truth is stranger than fiction, but all the above is well-documented in emails with Mr. Russ, Mr. Maksymuik, Mr. Barringer, Ms. Zambrano, and other parties, in Court records, and in the judgment obtained for Mr. Barringer, with the legal fees to Ms. Zambrano's law office by Mr. Russ, Mr. Maksymuik, and their Las Olas partnership.

338.    Hence, the Plaintiff has added a cause of action for Abuse of Process to this legal complaint.

339.    A suit for abuse of process in Texas must be based on an allegation that the other parties misused a process for a collateral purpose. In this case, the Defendants misused legal processes to attempt to steal two properties from the Plaintiff without paying consideration to the Plaintiff.

340.    In Texas, the elements of an abuse-of-process claim are (1) the defendant misused a regularly issued process—e.g., "the issuance of a citation or a writ"—for a purpose not lawfully warranted

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

by that particular process, (2) the defendant had an ulterior motive or purpose for misusing the process, and (3) the plaintiff sustained damage from the irregularity. Detenbeck v. Koester, 886 S.W.2d 477, 480 (Tex. App.-Houston [1st Dist.] 1994, no writ); Tandy Corp. v. McGregor, 527 S.W.2d 246, 249 (Tex. App.-Texarkana 1975, writ ref'd n.r.e.);

341.    Here, the Defendants misused legal processes, including the required service of process, to hide a fraudulent lawsuit from the Plaintiff, so as to steal the Properties.

342.    The Defendants' ulterior motive was to steal the Properties without paying the Plaintiff, and only paying the debt on the property to the mortgage holder (about one-fourth of the value), and by paying bribes to various parties.

343.    Though the Defendants did not successfully steal the property, the Plaintiff is damaged by the judgment awarded, which harms his reputation and is a matter of public record, and by now needing to travel to Ecuador and to invest his time and significant money in getting the fraudulent judgment cleaned up.

344.    All allegations and the precise amount of damages, as well as the damages the Defendants attempted to cause, shall be fully proven at jury trial.


WHEREFORE, PLAINTIFF PRAYS:


(a) As to Count I for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendants' breaches of contract and repudiation of contracts;

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

(b) As to Count II for all direct and consequential damages the Plaintiff incurred as a proximate result of the Partners' promissory fraud along with the imposition of exemplary damages to deter the Partners from committing such acts of fraud in the future;

(c) As to Count III for all direct and consequential damages the Plaintiff incurred as a proximate result of the Partners' negligent misrepresentations along with the imposition of exemplary damages to deter Russ from committing such acts of fraud in the future;

(d) As to Count IV for all direct and consequential damages the Plaintiff incurred as a proximate result of the Partners' promissory estoppel;

(e) As to Count V for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendants' negligence along with the imposition of exemplary damages to deter the Defendants from shirking their duties and committing acts and non-acts of negligence in the future;

(f) As to Count VI for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendants' breaches of fiduciary duty along with the imposition of exemplary damages to deter the Defendants from shirking their fiduciary duties in the future;

(g) As to Count VII for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendants' unjust enrichment;

(h) As to Count VIII for all direct and consequential damages the Plaintiff incurred as a proximate result of the Defendants' abuse of process, in commercially bribing the Plaintiff's attorney to attempt to steal P2 and P3 from him without consideration; the Plaintiff also respectfully suggests that the Court impose punitive damages for this morally reprehensible behavior, to deter the

54

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**

1    Defendants from abusing such processes and circumventing the law in the future. The Purchasers'

2    conduct is particularly egregious as they are the opposite of Robin Hood; they are the rich stealing

3    from the poor!

4    (i) For reasonable compensation for the value of his time in representing himself while he cannot

5        afford an attorney (*quantum meruit*);

6

7    (j) For reasonable future attorney's and paralegal fees and costs including administrative, filing,

8        service, Court reporter, jury fees, travel costs and for all other reasonable costs of this action and;

9    (k) For such other and further relief as this Court deems just and proper.

10

11    RESPECTFULLY SUBMITTED

12

13

14    Carl A. Wescott, *pro se*

15    September 28th, 2022

16

17

18

19

20

21

22

23

24

25                                              55
26    **PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF**
      **CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION;**
      **NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL;**
      **UNJUST ENRICHMENT; and ABUSE OF PROCESS**

## VERIFICATION

I, Carl A. Wescott, under penalties provided by law pursuant to Texas state law, as well as the federal laws of the United States of America, certify that the facts set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

The undersigned no longer has his emails from prior to January 2020 and does not have his copies of the two original contracts in question, and thus all dates, for example, are to the best of the undersigned's recollection.

_____
Carl A. Wescott

**PLAINTIFF'S AMENDED VERIFIED LEGAL COMPLAINT FOR BREACH OF CONTRACT; PROMISSORY FRAUD; NEGLIGENT MISREPRESENTATION; NEGLIGENCE; BREACH OF FIDUCIARY DUTY; PROMISSORY ESTOPPEL; UNJUST ENRICHMENT; and ABUSE OF PROCESS**