8/1/22, 1:19 AM                                    David Maksymuik - Founding Pa.. - Las Olas Ecuador | ZoomInfo.com



| Overview | Company | Industry Experience | Top Companies | Org Chart | News & Media | Solutions | Pricing | Similar Profiles | Our Data | Sign Up | Search for a contact or compan |

## David Maksymuik

*EXHIBIT A1*

☑ Profile Privacy

Founding Partner at Las Olas Ecuador

David Maksymuik is a Founding Partner at Las Olas Ecuador based in Hutto, Texas. Previously, David was a Vice President, Corporate Services at Ame...
Read More



**Contact**

### David Maksymuik's Phone Number and Email

- 📅 **Last Update**  5/11/2022 2:27 AM
- ✉️ **Email**  d***@halmosholdings.com    Engage via Email
- 📞 **Contact Number**  (***) ***-****    Engage via Phone
- 📱 **Mobile Number**  (***) ***-****    Engage via Mobile
- 📞 **HQ Phone**  (512) 846-1998
- 🏢 **Company**  Las Olas Ecuador
- 📍 **Address**  3874 Limmer Loop, Hutto, Texas, 78634, Unit...

## David Maksymuik Current Workplace

Las Olas Ecuador

📍 **Location**
3874 Limmer Loop,
Hutto, Texas, 78634,
United States

🏢 **Description**
Las Olas offers you the opportunity to live in one of six unique, yet complementary communities. You can enjoy seaside living at its best, or play a

    

Home   My Network   Jobs



Exhibit A2

## David Maksymuik · 2nd
Senior Vice-President & CFO at Las Olas Enterprises Inc.

- Las Olas Enterprises Inc.
-  Western University

Toronto, Ontario, Canada · **Contact info**

73 connections

 1 mutual connection: Norman C. Long

Connect    🔒 Message    More

## Activity
74 followers

**David hasn't posted lately**
David's recent posts and comments will be displayed here.

Show all activity →

## Experience

**Senior Vice-President & CFO**
Las Olas Enterprises Inc.
Oct 2011 - Present · 10 yrs 11 mos
Hutto, Texas

    

Home    My Network    Jobs

### Vice-President - Finance
Advantex Marketing International Inc.
Oct 1992 - Sep 1997 · 5 yrs
Toronto, Canada Area

## Education

 **Western University**
1999 - 2003

**Certified Management Account**
CMA Certificate

**Cetrified Public Accountant**
CPA Certificate

## Recommendations

Received    Given

**Nothing to see for now**
Recommendations that David receives will appear here.

## Interests

Companies    Groups    Schools

 **Ameresco**
25,653 followers


\+ Follow

**Western University**
271,296 followers

Highest and Best Use Defined | Real Estate Definitions | Real Estate Law Explained | Cases & Statutes | Authoritative & Comprehensive

  

Home | About the Encyclopedia Online | Subscriptions | Term of Month | Real Estate Defined BLOG | CONTACT

more real estate definitions

## highest and best use
As defined and explained in this ONLINE Encyclopedia

Highest and Best Use is the likely use, selected from a number of available choices, to which an area of land or a building may be put, based on what is physically possible and in compliance with zoning and building regulations and which, at the time of an appraisal, produces the most profitable present value of the land. The legal use of land or improved property which, at any point in time, is likely to produce the highest return to an investor (State Nat'l Bank of Conn. v. Planning and Zoning Comm'n of Town of Trumball, 156 Conn 99, 239 A.2d 530 (1968); *Re Eddy Forest Products* (1991) 27 OMBR 85, 87 (Can)). "The most probable use of a property which is physically possible, appropriately justified, legally permissible, financially feasible, and which resultsin the highest value of the property being valued", International Valuation Standards Committee, *International Valuation Standards* (8th ed. London: 2007), § 6.3.

An area of land may be considered to be at its highest and best use when it provides the optimum return to its owner or user, which may be as measured in monetary terms, or in intangible and social values, or a combination of such values. However, this value is not static. The use of land at any point in time is dependent on the legally permitted use, that which is physically and financially viable and the most productive use. In particular, highest and best use of land is a function of the land's 'capacity'—its ability to provide fruits and benefits. In turn this ability is a function of physical characteristics (slope, fertility, climate, load bearing capacity, etc.); the permitted or authorised use (agricultural, residential, industrial, mining commercial); intensity of use (the permitted plot or floor area ratio, planning and building height restrictions, etc.); location (accessibility, proximity to complementary uses); technological factors (building techniques, availability of plant and machinery); and the availability of other factors of production (labour, capital and management) to exploit the full potential of land. The use to which land is put is a function also of the owner's tastes and preferences and will be dependent on the demand of the end user. 'Highest and best use' represents a dynamic concept, a point to which land is tending. Landowners, or potential landowners, are constantly seeking to obtain a higher return from a given area of land than would be receivable by continuing the existing use. However, at any point in time, one use may be considered as the one that provides a higher and better use than any other. It is upon the basis of that use that an appraisal of land is generally carried out.

In the US and Canada, apart from its use in the general appraisal of real estate, 'highest and best use' may be applied when assessing just compensation for condemnation, i.e. account should be taken of a reasonable probability that a zoning change would be permitted; but not a special use available only to the acquiring authority, or any special purpose for which the property is being acquired. "'All [the land's] capabilities or uses to which it may be adapted should be considered in order to determine the market value.' Joyce on Damages, § 2135. ... the test is not the value for a special purpose, but the fair market value of the land in view of all the purposes to which it is naturally adapted". Sacramento Southern R. Co. v. Helbron

8/1/22, 1:39 AM

## Highest and Best Use, defined and explained

S Ct 704, 78 L Ed 1236 (1934); United States v. Cors, 337 US 325, 69 S Ct 1086, 93 L Ed 1392 (1949); United States v. 50.8 Acres of Land, 149 F Supp 749, 752 (DC NY 1957); Weldon v. State, 495 So.2d 1112, 1117 (Ala Civ App 1985); *Krupa v Camel Resources Ltd* (1982) 40 AR 528 (Can)). Also, for the purpose of determining the assessed value, a property should be appraised on the basis of its highest and best use. Sometimes called the 'optimum use'. Cf. **existing use**.

Terms in bold are defined elsewhere in the Encyclopedia.
Further explanation of the style of reference material is provided in the User Guide (available to subscribers)

### bibliographic references:

Mark R. Rattermann. Highest and Best Use Problems in Market Appraisals (Chicago: Appraisal Journal, Winter 2008).
AIA & U.S. Department of Justice. Uniform Appraisal Standards for Federal Land Acquisitions (5th ed. Chicago: 2000), § A-23 'Analysis of Highest and Best Use'.
Appraisal Institute. Readings in Highest and Best Use (Chicago: 1981).
Appraisal Institute. The Appraisal of Real Estate (13th ed. Chicago: 2008), Ch. 12 'Highest and Best Use Analysis'.
S.F. Fanning. Market Analysis for Real Estate: Concepts and Applications in Valuation and Highest and Best Use (Chicago: 2005, with CD-ROM).
J.D. Eaton. Real Estate Valuation in Litigation (2nd ed. Chicago: 1995), Ch. 6 'Highest and Best Use'.
S. Fanning. Market Analysis for Real Estate (Chicago: 2005), Part III 'Highest & Best Use Analysis'.
J.D. Fisher & R.S. Martin. Income Property Valuation (3rd ed. Chicago: 2007), Ch. 19 'Highest and Best Use Analysis: Applications'.

Australian Property Institute. *Valuation Principals and Practice* (2nd ed. Deakin, ACT: 2007), pp. 6–7, 88, 96, 386.
International Valuation Standards Committee. *International Valuation Standards* (8th ed. London: 2007), pp. 28–9.

### More Real Estate Terms

acceleration clause; bargain and sale; base fee; easement; emphyteotique lease; exclusive agency; *fructus*(Lat); *grosses reparations*(F); home valuation code of conduct (HVCC)(US); *immeuble*(F); leasehold enfranchisement; market value (MV); once a mortgage, always a mortgage; partial release (or the rule in *Dumpor's Case*); possession; resecuritization; resulting trust (and *Quistclose* trust); strata title; tenantable repair; Torrens title; unjust enrichment; waste

Terms & Conditions | Disclaimer & Legal Notice | Privacy Policy


Exhibit C

# Founding Membership Alternatives

## ≡ PLATINUM PLUS FOUNDING MEMBER

Designed for investors who are looking for maximum returns on their retirement

- 1 Luxury 650 m² Villa on an approximately 1,600 m² home site in the privileged enclave of Las Olas offered at $1,405,000 USD
- 2 home sites valued at $390,000 USD per site
- 1 service package worth $30,000 USD (*)
- Total investment value of $2,095,000 USD
- **Founding Price**
- 40% discount with full payment in 12 months   1,257,000 USD
- 45% discount with full payment in 6 months     1,152,250 USD
- 50% discount with full payment                 **1,047,000 USD**

## ≡ PLATINUM FOUNDING PARTNER

Designed for investors who prefer to invest moderately but still obtain high returns on their investment

- 1 Luxury 450 m² Villa on an approximately 1,500 m² home site in the privileged enclave of Las Olas offered at $1,030,000 USD
- 1 home site valued at $330,000 USD
- 1 home site valued at $100,000 USD
- 1 service package worth $30,000 USD (*)
- Total investment value of $1,490,000 USD
- **Founding Price**
- 40% discount with full payment in 12 months   894,000 USD
- 45% discount with full payment in 6 months    819,500 USD
- 50% discount with full payment                **745,000 USD**

## ≡ GOLD FOUNDING MEMBER

Designed for investors who are looking for minimum capital gain and an opportunity to build 3 or more homes in the future

- 3 home sites valued at $300,000 USD
- 2 home sites valued at $100,000 USD per site
- 1 package of services worth $30,000 USD (*)
- Total investment value of $1,130,000 USD
- **Founding Price**
- 40% discount with full payment in 12 months   678,000 USD
- 45% discount with full payment in 6 months    621,500 USD
- 50% discount with full payment                **565,000 USD**

## ≡ SILVER FOUNDING MEMBER

Designed for investors who wish to obtain capital gains and the privileged of owning a Luxury Villa

- 1 Luxury 500 m² Villa on an approximately 500 m² home site in the village of Las Estrellas offered at $450,000 USD
- 3 home sites valued at $100,000 USD per site
- 1 service package worth U.S. $30,000 (*)
- Total investment value of $780,000 USD
- **Founding Price:**
- 30% discount with full payment in 12 months   546,000 USD
- 35% discount with full payment in 6 months    507,000 USD
- 40% discount with full payment                **468,000 USD**

## ≡ PERSONALIZED MEMBER PACKAGE

We can custom design a member package for you with the 40% discount as long as the total investment is more than 600,000 USD.



**Loans from Randy/Las Olas to unwind at the close of P1/P2/P3**

2017: 10k (two 5ks)

2017 through 2018: Loans beginning in late 2017 related to P1 P2 P3: 13 * $5k = $65k

2019: ~$27.5K Second half of 2019 + $2k (Korea just before that) + laptop

2020: flight

2020, 2021, 2022: As per attached, totalling $26,800

---

Randy, there may be more from the first half of 2019, but I can't find any (I don't think you did either)

The bitcoin transactions were part of the prior monthly accounting

I don't know how to value the flight but I propose $700, making 2020, 2021, 2022 total $27,500

I believe you spent less than $700 on the laptop, and thus 2019 is $30.2k base.

(Please check the first five months of 2019 and see if you sent me money, which we would then add)

---

Thus, so far we have:

- $10,000 (2017)
- $65,000 (loans related to P1/P2/P3 which we expected to unwind in late 2018)
- $30,200 2019
- $27,500 2020/2021/2022

    $132,700 (principal)

---

We may want to add interest.

We agreed to allocate the loans evenly across P1/P2/P3, so that would be $44,233+ of principal allocated to each.

Please let me know if you find anything in the first five months of 2018, which we would add.

*CA. Wes att*

8/1/22, 3:23 AM                                                                 Gmail - documenting our conversation





Carl Wescott <carlwescott2022@gmail.com>

## documenting our conversation
1 message

**Carl Wescott** <carlwescott2022@gmail.com>                                                                    Sat, Jun 4, 2022 at 12:35 AM
To: texasfixtures@gmail.com, Carl Wescott <carlwescott2022@gmail.com>

Randy,

As you know, you and Las Olas entered into contract to purchase three properties in 2018, four years ago.

You've been making promises for four years and I've been quite patient.

While I appreciate the $100k+ you've loaned me along the way to help keep me going until the anticipated closings, unfortunately, your breaching our contracts has cost me many millions of dollars.

While I was encouraged to hear that you expect to have plenty of money early next week, I've been hearing that now for many months. I hope you do, but I fear that you won't.

You do have assets and income/cash flow so if you wish to perform, you can. It would be great to get a large payment, but the offers made to you this week don't require you to make a significant payment now.

Mr. Barringer is willing to extend his note in a no-money-down seller-finance over 10 years. My new entity, too, would be willing to extend 10 years of credit, or whatever you need, to close on a first property. (We could do another one two years later and so on).

I was disappointed to hear you state just now that if you don't have money early next week, that you will be unable to buy the properties, after I've waited for four years with promise after promise when you could not originally close on time.

I am sympathetic, too, to the fact that the ravages of the COVID-19 pandemic significantly reduced your main two businesses' income back in 2020 and a good part of 2021.

You're all too familiar with my situation and circumstances of abject poverty which lie in sharp contrast to the opportunities I have had to make money with just a little bit of money to do so, and the foundation of a home and stable life.

Your lack of closing has cost me many millions of dollars on top of the loss of the purchase prices, as you know all too well. It's also been a major factor in not seeing my children, as I have been unable to afford an attorney.

If you change your mind and wish to either close at least one of the properties, or work out payments for non-performance, just let me know any time next week.

If I don't hear from you, I'll assume that your last word on this, that you're now unable to pay and won't close, is your final decision (and that of David and Las Olas and all other relevant parties).

In that case, I will be forced to sue you the following week to right the scales of justice, in which case I'll see you in court.

I may have to sue for specific performance, but I will certainly have to sue for the consequences of your breaches.

I'm sorry to hear that you, too, now no longer have assets or income and thus can't make payments on properties that you've committed to purchasing over and over and over, but it's best that if you've become insolvent due to COVID-19 or other issues, that we deal with the consequences now so that we can all get past these issues... the sooner the better.

Please know that if I'm forced to sue you week after next, I will still be willing to work something out. It would be crazy for you to waste $200k+ on legal fees and then pay a multi-million dollar judgment when it will be so easy to work something out.

--Carl  +1 936 937 2688



(EXHIBIT F)

APPRAISAL REPORT OF THE MARKET VALUE OF
Phase I of Las Olas Ecuador Resort Complex
located in Charapotó Parish, El Pajonal rural area, eight kilometers south of
the coastal town of Bahia de Caráquez, Province of Manabí, Republic of Ecuador
As Is and As Developed

PREPARED FOR
Mr. David Maksymuik
General Manager, Las Olas Ecuador
Av. Bolívar y Ascázubi, Edif. Chang #3
Bahía de Caráquez, Ecuador

**VOLUME 1 of 2**
**Appraisal Report and Primary Addenda Items**



PREPARED BY



*PAI Group*
*Founded 1969*

# René Torres, MBA, PhD
*International Real Estate Specialist*
6036 Vanessa Street • Riverside, California 92504
Tel: (714) 352-0909 • Cell: (949) 205-5473
paigroup@hotmail.com

As of July 5, 2017

## APPRAISAL REPORT SUMMARY OF SALIENT FACTS AND CONCLUSIONS

The following is a summary of facts pertinent to the enclosed appraisal report.

| | |
|---|---|
| Property Appraised: | Phase I of Las Olas Ecuador, a rural parcel of land eight kilometers south of the coastal town of Bahia de Caráquez, Ecuador, on a total of 606.14 hectares (1,497.8 Acres) for this phase of the project, and which includes 1,045 meters of beach frontage. It will consist of 1,655 residences (condominium/townhouses/SFR mixed), a championship-caliber 18-hole golf course, a tennis complex, a beach club & spa, an equestrian center, and other amenities. There is also a 650 Hectare private Nature Reserve. |
| Effective Date of Appraisal: | July 5, 2017 |
| Land Area | 606.14 Hectares |
| | 1,497.8 Acres |
| Projected Marketing Period (Phase I): | 9 -11 Years |
| Highest and Best Use (Vacant): | Resort Development |
| Highest and Best Use (as Improved): | Resort Development |
| Present Use: | Same |
| **Market Value as Is:** | **$14,500,000** |
| **Market Value as Developed:** | **$58,000,000** |

*René Torres, MBA, PhD*



*Exhibit G*

## PROMISSORY NOTE

$528,453 owed as of June 1st, 2022

**FOR VALUE RECEIVED,** the undersigned (the "Maker" or "Borrower"), hereby promises to pay to the order of Mr. Jeff Barringer ("Payee"), the principal sum of $528,453 pursuant to the terms and conditions set forth herein.

**PAYMENT OF PRINCIPAL.** The principal amount of this Promissory Note (the "Note") and any accrued but unpaid interest shall be due and payable within ten (10) years of today, June 1st, 2022.

**INTEREST.** This Note shall bear interest, compounded annually, at 8% percent.

**SECURITY.** This Note is secured by two first mortgages on contiguous properties in Pajonal, Ecuador.

**PREPAYMENT.** The Borrower shall have the right at any time and from time to time to prepay this Note in whole or in part without premium or penalty.

**REMEDIES.** No delay or omission on part of the holder of this Note in exercising any right hereunder shall operate as a waiver of any such right or of any other right of such holder, nor shall any delay, omission or waiver on any one occasion be deemed a bar to or waiver of the same or any other right on any future occasion. The rights and remedies of the Payee shall be cumulative and may be pursued singly, successively, or together, in the sole discretion of the Payee.

**EXPENSES.** In the event any payment under this Note is not paid when due, the Maker agrees to pay, in addition to the principal and interest hereunder, reasonable attorneys' fees, plus all other reasonable expenses incurred by Payee in exercising any of its rights and remedies upon default.

**GOVERNING LAW.** This Note shall be governed by, and construed in accordance with, the laws of the State of Alabama.

**SUCCESSORS.** All of the foregoing is the promise of Maker and shall bind Maker and Maker's successors, heirs and assigns; provided, however, that Maker may not assign any of its rights or delegate any of its obligations hereunder without the prior written consent of the holder of this Note.

**IN WITNESS WHEREOF,** Maker has executed this Promissory Note as of the day and year first above written.

**Maker:** _____[signature]_____

Carl A. Wescott

10/1/22, 2:33 AM                                            Gmail - Barringer email

**M Gmail**     Carl Wescott <carlwescott2022@gmail.com>

EXHIBIT H

## Barringer email
1 message

**Carl Wescott** <carlwescott2022@gmail.com>                Wed, Jun 1, 2022 at 12:04 AM
To: texasfixtures@gmail.com
Bcc: Carl Wescott <carlwescott2022@gmail.com>

> fyi (email below).
>
> On Tue, May 31, 2022 at 6:02 AM Jeff Barringer <jeffbar11@aol.com> wrote:
>
>> Mr. Wescott,
>>
>> My wife and I are at the end of our rope. I just had to have major back surgery and I had to miss a lot of work.
>>
>> You owe us $500k+, and it's been years now and we need the money to help pay the bills.
>>
>> My attorney advises us that if we sue you and win, you will not only have to pay us the $500k+, but because of your breach of contract, you will have to pay damages for all of the consequences of your breach, in other words the opportunity costs of us not having the money that you should have paid previously.
>>
>> You will also need to reimburse me for my attorney fees, because you breached. I would otherwise be reluctant to invest $100k+ in attorney fees to get to trial.
>>
>> Let's please work this out in the next week or two to avert my impending legal action.
>>
>> I don't want to sue you; I just want you to make good on your promises.
>>
>>
>> Thank you
>>
>> Jeff Barringer
>>
>> Sent from the all new AOL app for iOS