FILED
NOV 14 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

CARL A. WESCOTT
8210 E. Via de la Escuela
Scottsdale, AZ 85258
*in propria persona*
WESCOTTCARL2022@GMAIL.COM
+1 936 937 2688

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CARL A. WESCOTT, <br><br> Plaintiff, <br><br> vs. <br><br> MR. WILLIAM "RANDY" RUSS, et al. <br><br> Defendants. | Civil Action No. **1:22-CV-00785 - LY** <br><br> **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff Carl A. Wescott, proceeding *pro se,* hereby responds to *Defendants' Motion to Dismiss,* brought pursuant to Federal Rules of Civil Procedure 12(b)(6) for Duane Morris, LLP clients Mr. William Russ, Mr. David Maksymuik, and Las Olas, among others, filed on their behalf by Mr. Luke Wohlford, esq. and Mr. Robert Castle, esq. The *Motion* was electronically filed with the Court on the night of Monday October 24th, 2022, and then was served pursuant to an electronic service agreement and received by the Plaintiff on Tuesday October 25th, 2022.

In this *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss* brief, the Plaintiff reviews the applicable legal standards for Rule 12(b)(6), then reviews the Defendants' arguments, then provides his perspective, the facts, and his counter-arguments related to Defendants' arguments.

*[signature]*
CARL A. WESCOTT, *pro se*

## Memorandum of Points and Authorities
## LEGAL STANDARDS - 12(b)(6)

A plaintiff's burden at the pleading stage is relatively light, in a Court's analysis of a Rule 12(b)(6) motion as to whether colorable claims are made. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)*. The court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party," *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995), including making all reasonable inferences in favor of the non-moving party *Rhodes v. Robinson*, 408 F.3d 559, 563 (9th 2005), and resolving all doubts in the plaintiffs' favor. See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984). Claims must be "plausible on [their] face," meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

*Pro se* pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). *Pro se* complaints are construed liberally and may only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). A *pro se* litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend,

unless the complaint's deficiencies could not be cured by amendment. See *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

### Summary of Defendants' arguments

First, Defendants argue (*Motion to Dismiss, Preliminary Statement*, page 2), that Plaintiff has not pled the existence of a valid, enforceable agreement, which in this case must be a signed contract in writing containing all material terms.

Second, Defendants argue that Plaintiff has failed to plead promissory fraud with enough particularity as required by *Fed R. Civ. P. Rule 9(b)*.

Third, Defendants argue that the Plaintiff's cause of action for negligent misrepresentation is "facially, fundamentally, and fatally flawed", due to being time-barred and due to the Plaintiff allegedly only offering "purported statements".

Fourth and finally, Defendants argue that all of Plaintiff's claims are untimely as they were not asserted until the statute of limitations for each claim and cause of action had expired.

### Breach of Contract

The Plaintiff, in his verified legal complaint, meaning his pleadings were and are under penalty of perjury, pled the existence of two valid, enforceable contracts (*Plaintiff's Amended Verified Legal Complaint, paragraphs 146 to 150, pp. 28-29*):

> 146. The Plaintiff had sold the properties to the Defendants (with the company if they so desired), as per the original two written contracts formed between the parties and early modifications. (Defendants also committed to buying a neighboring property, P1, from a different company of the Plaintiff's). All three purchases were to close in December 2018 or January 2019.
> 147. Mr. Maksymuik, as agent for Mr. Russ and for their Las Olas partnership, provided written purchase offers for P2 and P3 in 2018.
> 148. The purchase price for P2 was US $1,236,000 (from memory; the Plaintiff does not have the written contract in his possession).
> 149. The purchase price for P2 was US $1,236,000 (from memory; the Plaintiff does not have the written contract in his possession).

3

150. The Plaintiff accepted both offers in writing, thus forming contracts with Russ and Maksymuik and their Las Olas partnership.
(*Plaintiff's Amended Verified Legal Complaint, paragraphs 146 to 150, pp. 28-29*)

Mr. Maksymuik signed both written purchase offers (*Exhibit A, Sworn Affidavit of Carl Wescott*). The Plaintiff pled that he did not have the original contract offers, which were accepted, in his possession. Thus, with the accepted offers, the parties had a meeting of the minds, that the Defendants were purchasing those two real properties, for $1,236,000 each, and were to close by January 2019. The Plaintiff pled as to which parcels of land were being sold, the purchase prices ($1,236,000), and when the purchases were originally supposed to close (by January 2019). Those are material terms to the original binding, valid, enforceable contracts in writing.

The Plaintiff pled that he was and is a party to the contract. The Plaintiff fully performed, even signing over control/title to the two real properties in question (along with a third one that is the subject of a different contract) in 2018, based on the written and oral promises to pay of Defendants Mr. Russ and Mr. Maksymuik.

At this point, the Defendants have had control of the Plaintiff's former properties for years, but have not paid 90%+ of the contracted consideration (the purchase prices). As per Mr. Russ and the Plaintiff's agreed accounting in writing (from earlier in 2022), the total of the payments made on P2 and P3 is $88,466:

> Per Mr. Russ' and Plaintiff's agreed accounting and allocations of payments, the Defendants have paid $44,233 towards P2 and $44,233 towards P3 (*Plaintiff's Verified Amended Complaint*, paragraph 166, page 31)

Thus, Defendants still owe $2,383,534 of the original purchase prices, plus prejudgment interest, not to mention the consequential damages that come with a breach of contract. The

4

Defendants' not paying the Plaintiff for properties he has already signed over has damaged the Plaintiff, in an amount far greater than the $2,383,534 owing, as shall be fully proven at jury trial.

The Plaintiff has already verified all of these details under penalty of perjury in his original contract, and re-verifies them in his Sworn Affidavit of Carl Wescott (*Exhibit A*). If the contracts did not exist, one of the Defendants would have supplied an affidavit swearing under penalty of perjury that there were no such contracts. Of course, it would then be difficult to explain how the Defendants have come into control, possession, and ownership of the Plaintiff's former properties (P2 and P3). It would also be difficult for them to explain why the Plaintiff has years of lulling promises and payments, mostly made by Mr. Russ, towards the purchase of P2 and P3, that were already transferred to Defendants years ago.

The Plaintiff is seeking damages for the Defendants' nonpayment, for monies owed to him, and for prejudgment interest. Conjunctively and alternatively, given that the Plaintiff fully performed and that the Defendants now control and own the properties at hand, the Plaintiff is seeking equitable relief and an order for specific performance, for the Defendants to finish paying him, along with prejudgment interest. The Plaintiff, a legal layperson, believes that those two requests both will result the same Orders and Judgments in favor of Plaintiff.

To the extent that Defendants disagree with the Plaintiff's sworn recitations of the facts, including issues related to the Defendants' breaches of the two contracts at hand, those would be issues of fact. Questions of fact would be resolved by a trier of fact, in this case our future jury, weighing the strength of evidence (after discovery and motion practice), and weighing the credibility of the witnesses that shall be testifying then.

Though the Defendants later argue that the statute of limitations for breach of contract has passed, the Plaintiff asserts otherwise. As the individual parties met in California, the Plaintiff was

a California resident at the time of contract formation, and the parties signed contracts in California, the Plaintiff contends that California law should apply. The original breaches of the two contracts were in January 2019, less than four years ago. Under California law, there is a four-year statute of limitations on breaches of written contracts (*Section 337 of the California Code of Procedure*). Under Arizona law, where the Plaintiff currently resides, there's a six (6) year statute of limitations. "Defendants contend that Texas law governs this litigation," (*Motion to Dismiss*, footnote 4, bottom of page 8), but even under Texas law, there's a four-year statute of limitations for a breach of written contract (*Texas Civil Practice and Remedies Code 16.004* and *Texas Business and Commerce Code 2.725*).

    Even if we weren't within the statute of limitations on the original breach (but we are), the Defendants have continued to make payments to the Plaintiff for the two properties at hand, as per the Parties' agreed accounting of payments made towards P2 and P3 (summarized in *Plaintiff's Amended Verified Legal Complaint, Exhibit D*), through February 2022. Under the California law that the Plaintiff contends applies, each of those partial payments caused the statute of limitations to begin to run again from the time the payment is made (*California Code of Civil Procedure § 360*: "As a general rule, part payment of a debt or obligation is sufficient to extend the bar of the statute.")

    We are within the statute of limitations under Texas law as well even for the original breach of contract (January 2019), but as a final extra point, Mr. Russ' acknowledgements of his debt, promises to pay on his debt, and actual payments (most recently: February 2022) all likely extended the statute of limitations under Texas law as well through 2026.

    Mr. Russ' first repudiation of the Parties' contract was on June 4th, 2022, well within the statute of limitations.

6

### Promissory Fraud

Here, Defendants expand their argument into a three-pronged one: that Plaintiff has not adequately alleged the elements of the promissory fraud claim, has not alleged fraud with particularity, and that the Plaintiff's reliance on Defendants' fraudulent representations was unreasonable as a matter of law. Strangely, Defendants argue against a common law fraud cause of action, but the Plaintiff has not alleged common law fraud. The Plaintiff, applying California law, since the parties met in California when he was a California resident, and signed contracts in California, pled promissory fraud. (The Plaintiff believes that a Texas equivalent would be fraudulent inducement).

Under California law, "an action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). "'"Promissory fraud" is a subspecies of fraud and deceit. A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.'" (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 973-974 [64 Cal.Rptr.2d 843, 938 P.2d 903], internal citations omitted.).

The California jury instructions for Promissory Fraud (CACI 1902) have the following elements:

1. That Defendants made a promise to Plaintiff;
2. That Defendants did not intend to perform this promise when they made it;
3. That Defendants intended that Plaintiff rely on this promise;
4. That Plaintiff reasonably relied on Defendants' promise;
5. That Defendants did not perform the promised act;
6. That Plaintiff was harmed; and
7. That Plaintiff's reliance on Defendants' promise was a substantial factor in causing harm.

Here, Defendants made a series of promises and representations to the Plaintiff, many of which were false. By way of example, as per the Plaintiff's Verified Amended Complaint:

> 108. Russ and Maksymuik represented that Las Olas would have millions in sales by calendar year 2018, and that they could quickly pay cash, in full, first for P1, and then for P2 and P3. (*Plaintiff's Verified Amended Complaint*, paragraph 108, page 23)

Addressing specificity and particularity, the Plaintiff has identified the dates of those promises (Wednesday, August 30th, 2017, Thursday, August 31st, 2017, and Friday, September 1st, 2017) and their locations (at 840 Loma Vista Drive in Moss Beach, California, and in San Mateo at dinner and at the Defendants' hotel) (*Plaintiff's Amended Verified Complaint* and *Exhibit A*). The Plaintiff has identified the parties that made the representations and promises to him (Mr. Russ and Mr. Maksymuik).

The representations were material and turned out to be false. The Plaintiff alleges that the Defendants knew those promises were false at the time, or should have known they were false, in that in 2022, four years later, the Defendants' residential development project Las Olas still is not generating sales.

In doing so, the Defendants fraudulently induced the Plaintiff to enter into the contracts at hand, and later, to provide powers of attorney for the Defendants to control, possess, and sign over title to the properties. There's no way the Plaintiff would have signed over his one valuable asset (these properties) back then without believing that he was going to be paid as agreed by Mr. Maksymuik and Mr. Russ. The Plaintiff was also injured by his reliance on the representation, as he has neither the properties nor the promised monies the Defendants promised to pay for the two real properties. At this point, the Plaintiff has also lost a few years of his life where he should have had the benefit of the promised monies/payments.

The Defendants' intent, and what actually happened with the Las Olas residential development that has prevented it from realizing revenues and sales for over three years, are further matters of fact. Those matters of fact, too, shall be resolved by a trier of fact, in this case our future jury, weighing the strength of evidence (after discovery and motion practice), and weighing the credibility of the witnesses that shall be testifying then, including Mr. Russ and Mr. Maksymuik.

As to the Defendants' claims that the Plaintiff did not adequately protect himself and allegations that the Plaintiff should have seen unspecific "red flags" as to the Defendants' promises, rather than rely upon them, the Plaintiff believes the opposite is true. Mr. Russ had performed on the first part of the Parties' other contract (for P1), wiring close to US $20,000 per month to various parties including US $5,000 per month to the Plaintiff. The Plaintiff was familiar with Las Olas and the ease of development in Ecuador, having developed real estate there himself and having sold out multiple phases of a development (Hacienda San Joaquin in Vilcabamba, Ecuador). The Plaintiff was and is familiar with Mr. Russ' business Bobby Castle Construction, that makes margin on more than 100 contractors at a time. Finally, the Plaintiff was and is familiar with the market value of Las Olas, worth over US $58 million (*Plaintiff's Amended Legal Complaint, Exhibit F*), owned free and clear (as per the appraisal in Exhibit F). The Plaintiff believes that the Defendants had the ability to pay even without the Las Olas sales, or at least Mr. Russ, Bobby Castle Construction, and Las Olas had the ability to pay. The Defendants could have borrowed against Las Olas to pay the Plaintiff, and still can if required to honor their contracts and pay amounts long over-due (three+ years).

### Negligent Misrepresentation

The Plaintiff believes that the facts and arguments cited above, among others, would also defeat most of the Defendants' claims about his negligent misrepresentation cause of action. To

handle the Defendants' claim related to the impact of COVID-19 for most of 2020 and part of 2021, Defendants still could have paid in ways that did not rely on Las Olas revenue in January 2019, through 2019 and into Q1 2020, and in 2021 and 2022. Finally, the Plaintiff was and is familiar with the market value of Las Olas, worth over US $58 million (*Plaintiff's Amended Legal Complaint, Exhibit F*), owned free and clear (as per the appraisal in Exhibit F). The Plaintiff believes that the Defendants had the ability to pay even without the Las Olas sales, or at least Mr. Russ, Bobby Castle Construction, and Las Olas had the ability to pay. The Defendants could have borrowed against Las Olas to pay the Plaintiff, and still can if required to honor their contracts and pay amounts long over-due (three+ years). Finally, the Plaintiff believes that Mr. Russ and Ms. Russ have assets of many millions of dollars. The Plaintiff believes that Mr. and Ms. Russ have the ability to make the payments that they owe. We will confirm that in the discovery process.

## Promissory Estoppel

The Defendants' argument related to promissory estoppel relies on a complete misstatement of the facts: "Here, the alleged promise was to buy the P2 and P3 lots at some point in the future if Defendants could afford to do so." Quite the contrary; the Parties' contract promised cash purchases to close by January 2019 (*Exhibit A*).

The following paragraph of Defendants' argument also consists of a series of misstatements (*Plaintiff's Amended Verified Legal Complaint, Exhibit A*).

After three+ years after the January 2019 planned "close" of the Defendants' purchase of P2 and P3, with the Defendants having control and possession of the Plaintiff's former real properties, but with 90% of the purchase prices still owing, the only equitable remedy is for the Defendants to perform and pay the rest of the monies owing, plus prejudgment interest, plus consequential damages to be fully proven at jury trial.

10

### Breach of Fiduciary Duty

A cause of action for Breach of Fiduciary Duty arises when a fiduciary fails to use reasonable care in that relationship and the individual to whom this duty is owed suffers a harm as a result. In *Wolf v. Superior Court,* the Court held that a fiduciary relationship is "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." (*Wolf v. Superior Court* (2003) 107 Cal.App.4th 25, 29 [130Cal.Rptr.2d 860].) Looking at the Plaintiff's Amended Verified Legal Complaint, the Plaintiff has alleged that he was harmed by the Defendants' breach of the fiduciary duty to use reasonable care. In the case at bar, the Plaintiff alleges that the Defendants may have had a fiduciary duty to the Plaintiff based on their transactions with him… but certainly, once the Plaintiff signed over control of his properties to Mr. Maksymuik and to Las Olas, the Defendants would have had a fiduciary duty at that point.

In this case, the Defendants should have paid the Defendant and could have paid the Defendant, but chose not to, effectively stealing his properties. The Defendants failed to act as reasonably careful as a fiduciary would have acted and should have acted under the circumstances. The Plaintiff was harmed as a result. The Defendants' conduct was a substantial factor, and indeed, the main factor, in causing the harm and injury to the Plaintiff.

### Statutes of Limitations

The Plaintiff handled the breach of contract statute of limitations above in the breach of contract section. A claim for breach of contract runs at the time of the initial breach (January 2019).

The Plaintiff contends that California law should be applied by this Court, as the individual parties met in California, the Plaintiff was a California resident at the time of contract formation, and the parties signed contracts in California.

11

The promissory estoppel cause of action has a statute of limitations of four years for written promises in California (*California Civ. Proc. Code § 337(1)*) and in Texas (*Texas Civil Practice and Remedies Code § 16.051*). The limitations period does not begin to accrue until the false promise is discovered or could have been discovered by the exercise of reasonable due diligence. The Plaintiff alleges that the statute of limitations for the promissory estoppel count should run from the initial contract breach of January 2019. Thus, we are within the statute for the promissory estoppel count as well, especially given that Mr. Russ and Mr. Maksymuik travel outside of Texas for more than one-fourth (25%) of their time and more than half (50%) of their time, respectively (*Exhibit A, Sworn Affidavit of Carl Wescott*). Such travel outside the State of Texas tolls the applicable statute of limitations period under *Texas Civil Practice & Remedies Code Ann. § 16.063*.

The statute of Limitations for Breach of Fiduciary Duty is four years in California (California Code of Civil Procedure § 343) and in Texas. Thus, we are within the statute for the breach of fiduciary duty cause of action as well, especially given that Mr. Russ and Mr. Maksymuik travel outside of Texas for more than one-fourth (25%) of their time and more than half (50%) of their time, respectively (*Exhibit A, Sworn Affidavit of Carl Wescott*). The Plaintiff alleges that the original breach of fiduciary duty was in January 2019, and that we have had a continuing series of fiduciary breaches since then, up to June 2022. Further, the individual Defendants' travel outside of Texas has tolled the statute of limitations each time they left Texas (*Texas Civil Practice & Remedies Code Ann. § 16.063*).

According to *Cantu v. Resolution Trust Corp.*, 4 Cal. App. 4th 857 (Cal. App. 2d Dist. 1992), abuse of process is an injury to the person, and the statute of limitations applicable to a claim for abuse of process was and is one year according to *California Code Civ. Proc., § 340, subd. (3)*. However, the Plaintiff only discovered and confirmed that the Defendants had solicited Mr. Jeff

12

Barringer to file a hidden lawsuit with a faked proof of service in early June 2022 (Exhibit A). Thus, we are within the one-year statute of limitations for abuse of process if California law applies (Texas gives us two years).

Under California law, both Promissory Fraud and Negligent Misrepresentation have a three-year statute of limitations (California Code of Civil Procedure § 338(d)). Per the Code of Civil Procedure Section 338(d) a cause of action for fraud must be filed within three-years. The three-year statute of limitation for this sort of fraud "does not begin to run until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (*Sun'n Sand, Inc. v. United California Bank* (1978) 21 Cal.3d 671, 701 [148 Cal.Rptr. 329, 582 P.2d 920]). The Plaintiff is unsure when he discovered all the various misrepresentations and false promises to be false, and alleges that this is an issue of fact, to be determined by our future jury (or, possibly, with a Motion for Summary Judgment once those facts fully emerge via discovery).

Unjust enrichment is a two-year statute of limitations in California, where the legislature has provided a separate (two-year) limitations period covering contracts not founded upon an instrument of writing, such as unjust enrichment. *California Civ. Code § 339(1)*. The Plaintiff acknowledges that he might be beyond the statute of limitations for unjust enrichment in the case at bar, if the lulling promises and series of acknowledgements of debt, promises to pay, and payments through 2022 are not a factor.

Just like in Texas, the statute of limitations for negligence in California is two years. The Plaintiff acknowledges that the Defendants have a valid argument, that he has not filed the case at bar within the applicable statute of limitations for negligence, and thus, the Plaintiff expects to lose this cause of action in the instant case.

## Conclusion

The Plaintiff has been harmed by the tortious acts and non-acts of the Defendants, who owe him $2,383,534 of the original contracted purchase prices of two parcels of real property, plus prejudgment interest, not to mention the value of lost collateral opportunities. The Plaintiff transferred control, possession, and title via power of attorney, to those two properties, to Defendants in 2018, ahead of the Parties' anticipated January 2019 close date. As per the Parties' written contract, the Defendants were to pay in full for the properties at the January 2019 close date. Given that the Plaintiff transferred control and more to P2 and P3, the Plaintiff has fully performed. All that is required to finish the "close" of the two transactions is the Defendants making the rest of the payments they owe, which is $2,383,534 of the original purchase prices, plus prejudgment interest. The Defendants acknowledged their debt through Q1 and Q2 2022, made promises to pay through Q1 and Q2 2022, and made payments to the Plaintiff through February 2022. The Plaintiff is seeking the equitable relief of an order of specific performance for the Defendants to pay him what is owing, and/or damages for the Defendants' non-payment.

On June 4th, 2022, Mr. Russ repudiated the Parties' written contracts. Given Mr. Russ' recent repudiation of the Parties' two contracts and given Duane Morris LLP's written statements in the Defendants' Motion to Dismiss, a controversy exists between the Parties. The Plaintiff has been significantly injured by the tortious acts and non-acts of the Defendants. Now, the Plaintiff seeks the adjudication of his claims on their merits by jury trial, exercising his Constitutionally-protected petitioning rights. The Plaintiff respectfully requests that this Court deny the *Defendants' Motion to Dismiss*, so that we can move forward with discovery and motion practice. The Plaintiff, seeking redress, looks forward to his day in court and that future jury trial.

RESPECTFULLY SUBMITTED on Tuesday, November 8th, 2022